**MEDICAL EMERGENCY SERVICE ASSOCIATES (MESA), S.C., Plaintiff,**

v.

**Robert M. DUPLIS, M.D., et al., Defendants.**

**No. 82 C 3621.**

United States District Court, N.D. Illinois, E.D.

March 15, 1983.

Burke, Griffin, Chomicz & Wienke, P.C., Chicago, Ill., for plaintiff.

Theodore J. Low and William G. Schopf of Reuben & Proctor, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

GRADY, District Judge.

This is an action under 18 U.S.C. § 1961 *et seq.*, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and for fraud, misappropriation, tortious inducement of termination and malicious interference with advantageous relations, unfair competition under Ill.Rev.Stat. ch. 121½, § 262, tortious breach of employment duties, and tortious retention of compensation. Defendants have moved to dismiss the complaint for improper venue, lack of personal jurisdiction and insufficiency of service of process, or, in the alternative, to transfer. We grant the motion to dismiss.

## FACTS

On a motion to dismiss, we assume the facts as stated by plaintiff. We summarize the facts relevant to this motion here.

Plaintiff, Medical Emergency Services Associates ("MESA"), is an Illinois medical corporation which has its principal place of business in Buffalo Grove, Illinois. MESA contracts with hospitals to provide physicians to staff emergency rooms and subcontracts with physicians to service its primary contracts. On July 31, 1978, MESA contracted with defendant Orlando Regional Medical Center, of Orlando, Florida, to provide emergency medical services and staff there for a period of one year, with automatic one-year renewals until either party terminated the contract in accordance with its provisions. The contract continued in force until it was terminated on March 31, 1982. MESA entered into individual contracts of employment with each of defendant-physicians Duplis, Wolfson, Bautista, Baguio, Wilson and Castellaneta to provide emergency medical services, and each was assigned to Orlando Medical. Each of these contracts of employment provided that it would remain in force until it was terminated by either party upon 90 days' notice.

MESA's complaint alleges that prior to December 23, 1981, and while employed by MESA, one or more of defendants Duplis, Wolfson, Bautista, Baguio, Wilson and Castellaneta conceived and embarked upon a plan, scheme and course of conduct to form a group, organization or enterprise to replace MESA as the provider of emergency medical services for Orlando General. The complaint alleges that in furtherance of this plan, one or more of these defendants attempted to and did solicit the remainder of the defendants and others to join this plan and scheme. The scheme, as outlined in plaintiff's complaint, basically was that each of the physicians would simultaneously quit their employment with MESA and form another group to provide the same services to Orlando General. The complaint alleges further that the defendants conspired to conceal this scheme from MESA.

## DISCUSSION

Defendants have moved to dismiss the complaint for improper venue, lack of personal jurisdiction and insufficiency of service of process, or, in the alternative, to transfer to the Middle District of Florida.

*Venue*[1]

 Because this action is founded on both RICO[2] and diversity of citizenship, we look to 28 U.S.C. § 1391(b) to determine whether venue is proper.[3] That section provides:

A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, or in which the claim arose, except as otherwise provided by law.

28 U.S.C. § 1391(b). Plaintiff argues that venue is proper in the Northern District of Illinois because, according to plaintiff, the claim arose here.

Plaintiff argues that the claim arose in the Northern District of Illinois where,

. . . each defendant engaged in overt acts in furtherance of the conspiracy by mailing into Illinois simultaneous notices of contract termination, where the injurious effect of all of the defendants [sic] conduct was felt, where the "target" of the tortious conduct is located and where the contracts tortiously interfered with were legally centered.

Plaintiff's Response Memorandum at 19.

Defendants argue that plaintiff's claim arose in Florida because the alleged conspiracy was to deprive plaintiff of the value of its employment agreements for services to be performed in Florida; because Florida would be a more convenient venue for the production of witnesses and records; and because Florida has the most significant contacts with the inception of the claim. Defendants argue that their contacts with Illinois were marginal or non-existent.

According to defendants, five of the six doctor-defendants had only minimal contacts with Illinois. Those contacts, according to defendants, involved signing an employment agreement with MESA, an Illinois corporation, for services to be performed exclusively in Florida; the agreements, although signed by the defendants in Florida, stated that they were executed in Illinois; and some of the physicians infrequently made phone calls or wrote letters to Illinois during the course of their employment. With respect to the hospital-defendant, the contacts involved tours by hospital representatives of MESA-run hospitals in Illinois. Finally, with respect to Dr. Duplis, the sixth physician, defendants argue that his annual visits to MESA headquarters in Illinois were generally social and unrelated to the alleged acts which form the core of plaintiff's complaint.

The venue question must be decided in accordance with the principles laid down by the Supreme Court in *Leroy, Attorney General of Idaho v. Great Western United Corp.,* 443 U.S. 173, 99 S.Ct. 2710, 61

---

1. We consider the question of venue first because if venue is proper, the RICO statute obviates the need to consider whether we have personal jurisdiction over the defendants. RICO provides plaintiffs with nationwide service of process, 18 U.S.C. § 1965(d), and the parties do not dispute that if venue is proper under RICO, we have personal jurisdiction over these defendants.

2. Defendants argue in their brief that, "The RICO claim is plainly frivolous. The RICO statute was designed to deter the invasion of organized crime into legitimate business activity, not to be a makeweight allegation in every civil greivance [sic] in which the disputants have corresponded by mail. Moreover, in this instance the RICO claim has been filed in a transparent attempt to avail MESA of the nationwide service of process afforded to RICO plaintiffs." Def. Brief at 6–7.

Although we do not base our holding on this ground, we agree that RICO was not meant to apply to garden variety tort cases, which this case appears from the pleadings to be.

3. Defendants argue that the venue question should be decided under 18 U.S.C. § 1965(a), which is the venue provision of the RICO statute. Plaintiff concedes that if we apply that provision, venue is improper in the Northern District of Illinois, but argues that the RICO venue provision complements, rather than supercedes, the general venue provision, 28 U.S.C. § 1391(b). Two courts have agreed with plaintiff's position. *Farmers Bank of Delaware v. Bell Mortgage Corp.,* 452 F.Supp. 1278 (D.Del.1978); *Van Schaick v. Church of Scientology of California, Inc.,* 535 F.Supp. 1125, 1133 n. 6 (D.Mass.1982). It is unnecessary to reach this question because we hold that venue is not proper even under the more general provision, 28 U.S.C. § 1391(b).

L.Ed.2d 464 (1979). The Court there discussed the principles underlying 28 U.S.C. § 1391 and the standards to be used in determining where a claim "arose" for purposes of that statute. The Court stated that "Congress did not intend to provide for venue at the residence of the plaintiff or to give that party an unfettered choice among a host of different districts." *Id.* at 185, 99 S.Ct. at 2717. The Court concluded that

> the broadest interpretation of the language of § 1391(b) is that in the unusual case in which it is not clear that the claim arose in only one specific district, a plaintiff may choose between those two (or conceivably even more) districts that with approximately equal plausibility—in terms of the availability of witnesses, the accessibility of other relevant evidence, and the convenience of the defendant (but *not* of the plaintiff)—may be assigned as the locus of the claim."

*Id.*, emphasis in original (footnote omitted).

We read the Court's language in *Leroy* as requiring that venue in this case lie in Florida. The *Leroy* Court made plain that only in the unusual case will a claim be found to have arisen in more than one judicial district. Our case does not appear unusual at all. Although plaintiff has alleged some minimal contacts between its cause of action and the Northern District of Illinois, it seems clear that all or substantially all of the relevant acts complained of occurred in Florida. Where a claim arises must "be ascertained by advertence to events having operative significance in the case . . . ." *Sharp Electronics Corporation v. Hayman Cash Register Company,* 655 F.2d 1228, 1229 (D.C.Cir.1981). The various visits by some of the defendants to Illinois do not appear to have been related in any meaningful way to the conduct which forms the basis of plaintiff's complaint.

We also do not agree with plaintiff's second theory: that because the economic effect of its alleged injury was felt in Illinois, its claim arose here. That argument was advanced and rejected in *Leroy, supra,* where the plaintiffs had argued that a claim arose in Dallas because that is where the challenged statute would have had its impact on the plaintiffs. The Court stated that,

> . . . such a reading of § 1391(b) is inconsistent with the underlying purpose of the provision, for it would leave the venue decision entirely in the hands of plaintiffs, rather than making it "primarily a matter of convenience of litigants and witnesses."

443 U.S. at 186–87, 99 S.Ct. at 2718, quoting from *Denver & R.G.W.R. Co. v. Railroad Trainmen,* 387 U.S. 556, 560, 87 S.Ct. 1746, 1748, 18 L.Ed.2d 954 (1967). The "economic effect" argument has also been rejected in this district. *See Robbins v. First American Bank of Virginia,* 514 F.Supp. 1183, 1192–93 (N.D.Ill.1981). In *Robbins,* Judge Moran found that the alleged diversion of funds which provided the basis for the action resulted from activities by Virginia residents in Virginia. Further, all parties other than employees of the plaintiffs were located in Virginia, and, with the exception of the execution of one document, all of the relevant documents were substantially negotiated, drafted, and executed in Virginia, which was also the place of performance. The court, applying *Leroy,* held that "[t]he action here is not unusual and the locus of the claim is clearly Virginia." 514 F.Supp. at 1193. The court specifically rejected the plaintiffs' argument that venue was proper in the Northern District of Illinois because the impact of the defendants' wrongful acts would be felt here. Our case seems practically on all fours with *Robbins,*[4] and we similarly hold that venue is improper in the Northern District of Illinois.

In reaching this conclusion, we have considered the Seventh Circuit's opinion in *Peo-*

---

**4.** Although *Robbins* was decided under § 1391(a) rather than § 1391(b), Judge Moran in that case correctly noted that the test of where a claim arises is the same under the two subsections. 514 F.Supp. at 1193, n. 4.

ple of *State of Illinois v. City of Milwaukee,* 599 F.2d 151 (7th Cir.1979), *vacated on other grounds but upheld as to venue,* 451 U.S. 304, 101 S.Ct. 1784, 68 L.Ed.2d 114 (1981).[5] There, the State of Illinois sued to enjoin the City of Milwaukee from discharging raw sewage and inadequately treated sewage into Lake Michigan. The court held that venue was proper in the Northern District of Illinois under § 1391(b) because that was "where the injury was suffered." 599 F.2d at 157. We do not believe that the holding stands for the proposition that in every case the claim arises any place where the injury is *ultimately* suffered. In *Illinois v. Milwaukee,* the people of Illinois had not engaged in any business relationships which would have brought them into contact with sewage discharged in Milwaukee. The Illinois residents were passive recipients of the sewage, and their injury did not arise until the sewage made its way to Illinois from Wisconsin. Therefore, in that case, the place of injury and the place where the effects of the injury were felt were one and the same. In our case, however, plaintiff was doing business in Florida, and the alleged injury occurred to its business interests in Florida. Any effects of the alleged injury which plaintiff felt in Illinois were merely secondary.

As defendants point out in their brief, the plaintiff's theory that a claim arises anywhere its economic effect is felt would mean that the situs of a cause of action would always be the residence of the plaintiff. That theory would render meaningless the distinction which § 1391 makes between the place where the claim arises and the place where the plaintiff resides, and would remove the benefit which Congress intended to confer upon defendants in enacting § 1391(b), *see Leroy, supra,* 443 U.S. at 183–87, 99 S.Ct. at 2716–18.

We, therefore, do not agree with plaintiff that "place of injury" means the same thing as "place where the economic effects of the injury are felt" (although in some cases those places may be the same). We discount cases cited by plaintiff to support plaintiff's "effects" test but which merely support a "place of injury" test. *See Ragold, Inc. v. Ferrero, U.S.A., Inc.,* 506 F.Supp. 117 (N.D.Ill.1980), and *Bodine's Inc. v. Sunny-O-Inc.,* 494 F.Supp. 1279 (N.D.Ill. 1980). We similarly discount, and indeed find greatly disturbing, plaintiff's counsel's citation of *Great Western United Corp. v. Kidwell,* 577 F.2d 1256 (5th Cir.1978), without citing us to the subsequent history in that case. It is the very case which the Supreme Court reversed in *Leroy.*[6]

CONCLUSION

For the foregoing reasons, we find that venue does not lie in this district. Accordingly, we dismiss the complaint without prejudice.

---

**5.** The subsequent history of this case indicates that the Supreme Court denied certiorari on May 18, 1981 (451 U.S. 982, 101 S.Ct. 2313, 68 L.Ed.2d 839 (1981)), twenty days after its opinion at 451 U.S. 304, 101 S.Ct. 1784, 68 L.Ed.2d 114 vacating the Seventh Circuit's order (599 F.2d 151 (7th Cir.1979)). We are informed by the Official Reporter's Office that the May 18, 1981, denial of certiorari occurred because both the State of Illinois and the City of Milwaukee had petitioned for certiorari from the Seventh Circuit's order. In vacating the Seventh Circuit's order in its opinion at 451 U.S. 304, 101 S.Ct. 1784, 68 L.Ed.2d 114, the Supreme Court was acting pursuant to its grant of certiorari to the City of Milwaukee (published at 445 U.S. 926, 100 S.Ct. 1310, 63 L.Ed.2d 758 (1980)). The order published at 451 U.S. 982, 101 S.Ct. 2313, 68 L.Ed.2d 839 was the denial of the State of Illinois' petition for certiorari.

**6.** Defense counsel was apparently unaware of this fact, and indeed did not even cite the controlling case of *Leroy.*