**LYONS SAVINGS & LOAN ASSOCIATION, an Illinois association, Plaintiff,**

v.

**WESTSIDE BANCORPORATION, INC., a Delaware corporation, Westside Federal Savings and Loan Association, a Washington association, Robert A. King, Robert W. Abel, Daniel K. Woodruff, Anne E. Kelley, Jon W. Hosea, Robert D. Bly, Mary Ryan, and Kathy Konesky, Defendants.**

No. 85 C 6501.

United States District Court, N.D. Illinois, E.D.

March 26, 1986.

Douglas Drenk and David Drenk, Guerard, Konewko & Drenk, Wheaton, Ill., for plaintiff Lyons Sav. and Loan Ass'n.

David Herbst, Portes, Sharp, Herbst & Kravets, Chicago, Ill., for intervenors.

Robert Patterson, Antony Burt and John Rogers III, Hopkins & Sutter, Chicago, Ill., for defendant FSLIC as receiver for Westside.

Steven McCormick, David Erie, Kirkland & Ellis, Chicago, Ill., for all individual defendants except Kathy Konesky.

## MEMORANDUM AND ORDER

MORAN, District Judge.

This action centers around a loan participation agreement ("agreement") which financed construction of condominiums in Hawaii. Lyons Savings & Loan Association ("Lyons") and several other banks bought an interest in the loan from Westside Federal Savings & Loan Association ("Westside"). Westside Bancorporation is Westside's parent company. The individual defendants named are past or present directors or officers of Westside.

Lyons claims Westside breached the agreement by failing to disclose its purchase of an equity interest in the condominiums. Lyons' 13 counts in its first amended complaint all stem from this allegedly illegal conduct. The first eight counts are common law claims.[1] Our jurisdiction over

---

1. The eight counts are for: (i) breach of contract; (ii) breach of implied covenant of good

them is based on diversity of citizenship, 28 U.S.C. § 1332. Count IX claims a violation of the Racketeer Influenced and Corrupt Organizations Act (RICO). Count X claims securities fraud in violation of § 10(b) of the Securities Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5. Counts XI and XII are pendent state claims based on, respectively, Illinois security law and the Illinois Consumer Fraud and Deceptive Business Practices Act. Count XIII, against the individual defendants only, is for bank bribery in violation of 18 U.S.C. § 215.

Lyons filed its original complaint on July 19, 1985. On August 30, 1985 the Federal Home Loan Bank Board (FHLBB) found that Westside was insolvent and appointed the Federal Savings & Loan Insurance Corporation (FSLIC) receiver for Westside pursuant to 12 U.S.C. § 1464(d)(6)(A). FSLIC was substituted for Westside as a party to this action. Now FSLIC has moved to dismiss the Lyons complaint for lack of subject matter jurisdiction as to any claims against Westside because federal law mandates that these claims be brought through an administrative claims procedure. 12 U.S.C. § 1464(d)(6)(C).

The other banks involved in the agreement have intervened with a one-count complaint. They claim that the agreement gives them the right to select (by majority vote) a substitute lead lender for Westside given Westside's insolvency, and they request the court to so declare. The FSLIC seeks dismissal of the intervenors' complaint on the grounds that it has the power to act as lead lender and is currently lawfully exercising that power.

Also before the court is the individual defendants'[2] joint motion to dismiss for lack of venue, or for change of venue, on the grounds that most of them and most of the evidence in the case is located in or near Seattle, making Chicago an improper situs of the action.

faith and fair dealing; (iii) breach of fiduciary duty; (iv) fraud; (v) negligent misrepresentation; (vi) declaratory relief; (vii) conversion; (viii) constructive trust.

## I. FSLIC's Motion to Dismiss Lyons' Complaint Against Westside

Our analysis of the FSLIC's motion to dismiss starts with the following statutory provisions:

(C) Except as otherwise provided in this subsection, no court may take any action for or toward the removal of any conservator or receiver [appointed by the FHLBB], or, except at the instance of the Board, restrain or effect the exercise of powers or functions of a conservator or a receiver.

12 U.S.C. § 1464(d)(6)(C), and

In connection with the liquidation of insured institutions, the [FSLIC] shall have power to carry on the business of and to collect all obligations to the insured institutions, to settle, compromise, or release claims in favor of or against the insured institutions, and to do all other things that may be necessary in connection therewith, subject only to the regulation of the Federal Home Loan Bank Board, or, in cases where the [FSLIC] has been appointed conservator, receiver, or legal custodian solely by a public authority having jurisdiction over the matter other than said Board, subject only to the regulation of such public authority.

12 U.S.C. § 1729(d).

■ The Fifth Circuit has recently held that these provisions to foreclose the federal courts from presiding over litigation of claims against a bank in receivership. *North Mississippi Savings and Loan Association v. Hudspeth,* 756 F.2d 1096 (5th Cir.1985), *cert. denied* — U.S. ——, 106 S.Ct. 790, 88 L.Ed.2d 768 (1986). *See also Manning Savings and Loan Association v. Federal Home Loan Bank Board,* No. 83 C 757, slip op. at 4 (N.D.Ill. Jan. 4, 1984); *First American Savings Bank, et al., v. Westside Federal Savings and Loan Association,* 639 F.Supp. 93 (W.D.Wash.1986).

**2.** All the individual defendants but Kathy Konesky have so moved. The court for convenience will refer to this group as the individual defendants.

The Fifth Circuit reasons that "Congress wanted the FSLIC to be able to act quickly and decisively in reorganizing, operating or dissolving a failed institution and intended that the FSLIC's ability to accomplish these goals not be interfered with by other judicial or regulatory authorities". *Hudspeth*, 716 F.2d at 1101. Rather, the FHLBB has established an administrative process governing claims against assets of a savings and loan association in receivership. The FSLIC has the power to allow or disallow any claim, 12 C.F.R. § 549.5–1(b)(2), and its decision is subject to review by the FHLBB, 12 C.F.R. § 549.5–1(b)(3). The FHLBB's final decision is subject to judicial review under § 10 of the Administrative Procedures act, 5 U.S.C. §§ 701–706. *See First Savings and Loan Association v. First Federal Savings and Loan Association*, 531 F.Supp. 251, 254 (D.Haw.1981).

The legislative history of 12 U.S.C. §§ 1464(d)(6)(C) and 1729(d) supports the case law. The first provision was enacted in 1966 as part of the Financial Supervisory Act of 1966, which amended § 5(d) of the Home Owners' Loan Act of 1933 and § 407 of the National Housing Act. The amendment reworked all of what is now codified as 12 U.S.C. § 1464(d). The purpose of the amendment was to "arm regulatory agencies with a wider range of effective enforcement remedies" in order to "provide sorely needed flexibility to protect the public's money in the form of demand deposits and time and savings accounts...." H.R. Rep. No. 2077, 89th Cong., 2d Sess. 4–5 (1966). As part of this effort the amendment gave the FSLIC and the FHLBB the additional power to issue temporary and permanent cease-and-desist orders.

As part of this effort to broaden the powers of the FHLBB and other regulatory agencies involved in regulating the banks, Congress added the language contained in 12 U.S.C. § 1464(d)(6)(C) restricting the federal courts' jurisdiction. The only mention of this new provision in the legislative history of the amendment is in the section-by-section summary of the amendment done by the Senate Banking and Currency Committee, which states:

> The provisions of this subparagraph [12 U.S.C. § 1464(d)(6)(C)] would, in effect, *limit the jurisdiction of a court* to order the removal of a conservator or receiver, except in an action for removal brought by an association under authority of paragraph (6)(A) of the proposed amended section 5(d), or, except at the instance of the Board, to restrain the exercise of the powers or functions of a conservator or receiver.

(Emphasis added.) S.Rep. No. 1482, 89th Cong., 2d Sess. 14, *reprinted in* 1966 U.S. Code Cong. & Ad.News 3532, 3545.

This language indicates Congress' intent to channel claims against a bank in receivership through an administrative process over which the FSLIC and the FHLBB preside. Support for this interpretation of congressional intent comes from the passages in the 1966 legislative history which deal with judicial review of the administrative process. As reported by the House Committee on Banking and Currency:

> The scope of judicial review shall also be in conformity with the provisions of Title 5 of the United States Code relating to judicial review of administrative action, ... except that agency action, findings, and conclusions may be set aside if not supported by the weight of the evidence.... The purpose of the new language is to safeguard the right of individuals and institutions from arbitrary and capricious agency action.

H.Rep. No. 2077, 89th Cong., 2d Sess. 6 (1966). This language shows that Congress wanted claims against a bank in receivership to go through the agencies before reaching the federal courts.

Section 1729(d) was amended in 1982 as part of an effort to provide "the FSLIC with conservatorship/receivership powers over State-Chartered insured institutions approximately equal to those which it now has with respect to Federal Associations...." S.Rep. No. 97–536, 97th Cong., 2d Sess. 48, *reprinted in* 1982 U.S.Code Cong. & Ad.News 3054, 3102. Even

though § 1729 deals primarily with the FSLIC's power over state savings and loan associations, it is useful to our analysis here because its subsection (d) reiterates in its language the FHLBB's exclusive regulatory authority over FSLIC's actions.

■ The plaintiff argues that the judicial resolution of claims is a function distinct from a receiver's role of allocating assets to satisfy those claims. However,

as the FSLIC points out, resolution of even the facial merits of claims outside of the statutory reorganization process would delay the receivership function of distribution of assets: the FSLIC would not be able to determine how much to pay other claimants until the termination of the parallel litigation. Given the overriding congressional purpose of expediting and facilitating the FSLIC's task as receiver, such a delay is a "restraint" within the scope of the statute.

*Hudspeth*, 756 F.2d at 1102. This argument was similarly rejected in *Norwood Federal Savings and Loan Association v. California Heritage Bank*, 85–0792–E, slip op. (S.D.Cal. Aug. 12, 1985) [Available on WESTLAW, DCTU database], *citing Hudspeth*. As that court stated:

[The *Hudspeth* opinion] gives due deference to the complex regulatory scheme adopted by Congress for liquidating troubled savings and loans and other covered institutions, *see* 12 C.F.R. §§ 549.1–549.8, 569a.1–569a.13 (1985), and it protects the ability of the receiver to expeditiously and fairly aggregate the claims against the institution, determine their validity, marshal the assets, and distribute them according to the relative priority of claimants.

Slip op. at 3.

■ None of plaintiff's other arguments persuades us to depart from the *Hudspeth* holding. Plaintiff tries to distinguish *Hudspeth* on the ground that it was removed from state court after the FSLIC was appointed receiver and that therefore the federal court considered its jurisdiction for the first time *after* FSLIC's involvement. Here claims were brought in federal court *before* FSLIC's involvement. However, the *Hudspeth* court did not rely on the timing issue for its holding. Moreover, it is a basic law of federal jurisdiction that a court may at any time during a case find it lacks subject matter jurisdiction and dismiss the case pending before it. *See generally* Wright, Miller and Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3522 (1984); Rule 12(h)(3) of the Federal Rules of Civil Procedure. *See also Union County Bank v. Knox Capital Corporation*, No. 81721, slip op. (Tenn.Ch.Ct. March 28, 1985) (court dismissed suit for lack of subject matter jurisdiction even though FSLIC appointed after trial on claims against bank had been completed).

■ Plaintiff also argues that the FSLIC has express statutory authority to repudiate employment contracts such as the one involved in *Hudspeth*, while the agency has no such authority to review the claims, largely sounding in tort, involved here. However, FSLIC's broad powers under § 1729 to "settle, compromise or release claims" are not dependant on the type of claim involved. The *Hudspeth* court implied as much as its holding is not based on, nor in any way limited by the fact that an employment contract was involved. *See also Norwood, supra* (loan participation agreement involved).

■ Plaintiff's attempt to characterize FSLIC's powers as unconstitutional also must fail. Lyons relies on *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), to argue that § 1464 unconstitutionally delegates to FSLIC the authority to adjudicate the types of claims involved in this case. However, *Northern Pipeline* does not apply to administrative claims procedures. Rather, the case involved the much different question of whether Congress could, consistent with Article III, create bankruptcy courts with full judicial powers to determine private rights. The Court held these courts unconstitutional. In a subsequent decision the Supreme court explained its holding in *Northern Pipeline*, stating:

The court's most recent pronouncement on the meaning of Article III is *Northern Pipeline.* A divided court was unable to agree on the precise scope and nature of Article III's limitations. The court's holding in that case establishes only that Congress may not vest in a non-Article III court the power to adjudicate, render final judgment, and issue binding orders in a traditional contract action arising under state law, without consent of the litigants, and subject only to ordinary appellate review.

(Citations omitted.) *Thomas v. Union Carbide Agricultural Products Co.,* 473 U.S. ——, 105 S.Ct. 3325, 3334–36, 87 L.Ed.2d 409 (1985). As the FSLIC correctly points out, neither it nor the FHLBB can render "final judgment" or "issue binding orders." The kind of delegation involved in § 1464 is consistent with Article III. *See Thomas,* 105 S.Ct. at 3334 ("Many matters that involve the application of legal standards to facts and affect private interest are routinely decided by agency action with limited or no review by Article III courts.").

For the foregoing reasons, FSLIC's motion to dismiss Lyons' claims against Westside is granted.

## II. FSLIC's Motion to Dismiss Intervenors' Complaint

■ In its motion to dismiss, the FSLIC argues that the court does not have subject matter jurisdiction over the intervenors' complaint for the same reason that no jurisdiction exists over Lyons' claims against Westside. The court agrees.

The intervenors' complaint seeks a declaratory judgment that the various banks which invested in the agreement have the right to vote on a lead lender to substitute for Westside.[3] They base this claim on a clause in the agreement which states:

In the event of the insolvency of Seller or of the filing by or against Seller of a petition under any provision of bankrupt-

cy law, or of an assignment for the benefit of creditors, or the appointment by any public or supervisory authority of any person in charge of the same or its assets, or a breach by Seller of any covenant or agreement herein or in any participation certificate, or in the event of the involuntary sale of the loan or advances, or the issuance by any appropriate monitoring or supervisory authority of a cease and desist order ... it is agreed that Buyer shall automatically succeed to all rights, title, status and responsibilities which Seller may have regarding the holding and servicing of the loan and advances, and have an option to exercise all of the powers hereabove granted to Seller, and have the option to designate itself or any person or firm in its discretion to exercise such powers in a manner consistent with respective participation interests of all owners hereunder as such interests may appear.

The FSLIC contends that no substitute lead lender is necessary because it has stepped into Westside's shoes. The agency further contends that granting intervenors their requested relief would restrain it from performing its statutory functions, the same way granting Lyons relief would, and that the intervenors by administrative claim should raise the issue of whether another lead lender should be substituted pursuant to the agreement. The intervenors declare that no one is acting as lead lender and that the position should be filled to preserve any value that exists in the agreement. They disagree with FSLIC's characterization of their complaint as interfering with its duties.

■ Regardless of whether or not the FSLIC is presently acting as lead lender, the statute gives the agency authority to do so. Specifically, § 1729(b) states:

(1) In the event that a federal association is in default, the [FSLIC] shall be

---

**3.** Both parties agree that the lead lender's function is to service and administer the loan on behalf of the other participants.

appointed as conservator or receiver and as such—

(A) is authorized—

(i) to take over the assets of and operate such association.

This power must include the authority to service and administer the loan participation agreement, since this would be a function included in operating the association. *Cf. Biscayne Federal Savings and Loan Association v. Federal Home Loan Bank Board*, 572 F.Supp. 997 (S.D.Fla. 1983) (FSLIC has authority under § 1729(a) to assume control of the association, oust several of its officers and transfer its assets).

■ Placing one of the intervenors in the position of lead lender, pursuant to the loan agreement, would give the lead lender "an option to exercise all of the powers hereinabove granted to Seller [Westside]." This power could restrain the FSLIC in its functions, particularly if the agency determined that the agreement (an asset of Westside) should be sold. Thus the court has no subject matter jurisdiction to place one of the intervenors in the position of lead lender, given 12 U.S.C. § 1464(d)(6)(C), although the intervenors remain free to seek, through an administrative claim, the selection of a new lead lender.

Because we dismiss the intervenors' complaint, the location and convenience of the banks other than Lyons involved in the agreement does not factor into our analysis of whether venue is proper here, the question to which we now turn.

### III. Individual Defendants' Motion to Dismiss or Transfer for Lack of Venue

■ The individual defendants argue that venue in this district is improper under the general venue statute, 28 U.S.C. § 1391(b), as well as the specific venue statutes of RICO and the Securities Act. They claim that the Western District of Washington is the center of gravity of Lyons' complaint. Because this case rests on both diversity and federal question jurisdiction, 28 U.S.C. § 1391(b) provides the applicable venue requirement. That section reads:

A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, or in which the claim arose, except as otherwise provided by law.

Because none of the defendants reside in Illinois, venue is proper here only if the plaintiff's claim arose here. Deciding where the claim arose for venue purposes is determined by where the "events having operative significance in the case" occurred. *Medical Emergency Service Associates v. Duplis*, 558 F.Supp. 1312, 1315 (N.D.Ill.1983); *Robbins v. First American Bank of Virginia*, 514 F.Supp. 1183, 1192 (N.D.Ill.1981).

■ Some operative events occurred in Illinois, namely Lyons' acceptance of Westside's offer to participate and Lyons' signature on the agreement. However, the majority of events surrounding the agreement occurred in or near Seattle, Washington. The agreement was drafted and executed there. The negotiations concerning the agreement were conducted by Westside's representatives in Seattle. No Westside official, employee or agent traveled to or visited Illinois for any purpose concerning the agreement or any other agreements or negotiations related to it. Further, all Westside's loans were reviewed and approved by its loan committee, which held all of its meetings at Westside's principal place of business in Seattle. All documents pertaining to the agreement were prepared by Westside officers and/or counsel, also located in Seattle. Given that plaintiff's theories of misrepresentation and concealment involve the actions of Westside's officers and agents, and all these actions occurred in or around Seattle, we conclude that the claim arose in Seattle. *See Leech v. First Commodity Corporation of Boston*, 553 F.Supp. 688 (W.D.Pa.1982); *Robbins*, 514 F.Supp. at 1193.

■ Several additional factors add weight to this conclusion. The locus of the

claim is determined in part by the convenience of the defendant and the location of major witnesses and relevant evidence, as well as by operative events. *Payne v. Marketing Showcase,* 602 F.Supp. 656, 660 (N.D.Ill.1985). Here, five defendants live in Washington, one is in Colorado and the other two live in California. Clearly, Seattle is a more convenient location for them than Chicago. Plaintiff tries to minimize our consideration of the defendants' convenience by claiming their importance to the case is *"de minimis."* However, we feel that if this is indeed the case it argues more strongly for venue in Washington. The court should attempt to minimize the burden placed on the defendants to litigate this case if indeed they are not important to Lyons' claims.

Second, the witnesses and relevant documents are in Washington. All the people involved in preparing and servicing the agreement are in Washington. All of Westside's loan documentation is in Bellevue, a suburb of Seattle, at the FSLIC headquarters. A "common sense appraisal" of the contours of the case requires us to conclude that the locus of Lyons' claim is Washington, not Illinois. *see Payne,* 602 F.Supp. at 660.

■ Plaintiff argues that venue is proper here because it is here where its customers will feel the loss Lyon has allegedly suffered due to defendants' actions. This type of argument has been rejected by this and other courts because "such an argument would allow plaintiffs to manipulate venue to their convenience, a result not anticipated by the venue statute." *Robbins,* 514 F.Supp. at 1193. *See also Duplis,* 558 F.Supp. at 1315–16. We similarly reject the argument in this case. The cases plaintiff cites to justify its economic injury argument are not dispositive. Both determined transfer was inappropriate because venue was proper in Illinois for a number of reasons, only one of which was direct economic injury to an Illinois citizen. *Felicia, Ltd. v. Gulf American Barge, Ltd.,* 555 F.Supp. 801 (N.D.Ill.1983); *Ronco, Inc.*

*v. Plastics, Inc.,* 539 F.Supp. 391 (N.D.Ill. 1982).

■ Because the court finds venue improper in Illinois under the general venue statute, 28 U.S.C. § 1391(b), there is no need to reach the issue of whether venue is proper under the venue provisions of RICO and the Securities act. *See Duplis,* 558 F.Supp. at 1314 n. 3. However, the court notes that venue is not proper here under either federal act, both of which require defendants to have transacted business affairs in this district in their individual capacities. *Bulk Oil (USA) Inc. v. Sun Oil Trading Company,* 584 F.Supp. 36 (S.D.N.Y.1983), and *Payne,* 602 F.Supp. at 659 (RICO); *United Industrial Corporation v. Nuclear Corporation of America,* 237 F.Supp. 971 (D.Del.1964) (Securities Act). Plaintiff has presented no evidence that the individuals have ever had contact with Illinois on personal business.

■ The court may either dismiss or transfer the case under 28 U.S.C. § 1406(a). Transfer is warranted if "in the interest of justice". Because "[c]ourts favor the resolution of disputes on the merits," *Leech,* 553 F.Supp. at 691, and the claims here are not frivolous, the court will transfer this case to the Western District of Washington.

### Conclusion

Having considered the various motions in this case, the court dismisses plaintiff's complaint as against Westside and dismisses the intervenors' complaint for declaratory judgment. This leaves plaintiff's complaint as against the individual defendants. Venue for this action is improper in Illinois. The case is transferred to the Western District of Washington, in the interests of justice.