**FEDERAL SAVINGS AND LOAN INSURANCE CORP., as receiver for Sunrise Savings and Loan Association, a Federal Savings and Loan Association, Plaintiff,**

v.

**FLORIDA 100 DEVELOPMENT GROUP, INC., etc., et al., Defendants.**

No. 86–10006–Civ–King.

United States District Court, S.D. Florida, Miami Division.

Oct. 7, 1987.

1578

Squire, Sanders & Dempsey, Miami, for plaintiff.

David M. Wells, Miami, Fla., Alfred K. Firgola, Marathon, Fla., Bernard T. Moyle, Fort Lauderdale, Paul G. Fletcher, Homestead, Fla., for defendants.

ORDER GRANTING, IN PART, AND DENYING, IN PART, MOTION TO DISMISS COUNTERCLAIMS AND AFFIRMATIVE DEFENSES.

JAMES LAWRENCE KING, Chief Judge.

This action centers around a July 1983 loan in the amount of $3,380,000 made by Sunrise Savings and Loan Association of Florida ("Old Sunrise") to Florida 100 Development Group, Inc. ("Florida 100"). The loan was secured by a mortgage, and by the personal guarantees of defendants King and Liberti. The other defendants have various liens on the same property. Florida 100 failed to make any payments after May 1, 1986.

On July 18, 1985 the Federal Home Loan Bank Board ("FHLBB") declared Old Sunrise insolvent, and appointed the Federal Savings and Loan Insurance Corporation ("FSLIC") as Old Sunrise's receiver. The FSLIC organized a new Sunrise Savings and Loan ("New Sunrise") and transferred to New Sunrise substantially all of Old Sunrise's assets, deposits, and liabilities, including the Florida 100 loan.

New Sunrise initiated an action in the Circuit Court of the Sixteenth Judicial Circuit in and for Monroe County, Florida against these defendants seeking to foreclose the mortgage. On September 12, 1986, the FHLBB declared New Sunrise insolvent and appointed the FSLIC as receiver for purposes of liquidation. Pursuant to 12 U.S.C. § 1730(k)(1)(C), FSLIC timely removed this action to this court.

In the instant motion, the FSLIC contends that this court lacks subject matter jurisdiction over the counterclaims of the defendants Marathon Building and Materials, Inc., Bracewell, Jenkins, Ruwell, and Patent Scaffolding Company, as well as over the affirmative defenses of these defendants and Florida 100, King and Liberti. After examining the statutes and FHLBB regulations, this court agrees with the FSLIC's position with respect to the defendants' counterclaims, but rejects the FSLIC's argument regarding the defendants' affirmative defenses.

## DISCUSSION

This case turns upon an interpretation of 12 U.S.C. § 1464(d)(6)(C). This section provides:

Except as otherwise provided in this subsection, no court may take any action for or toward the removal of any conservator or receiver, or, except at the instance of the Board, restrain or affect the exercise of powers or functions of a conservator or receiver.

Within the circuits two different interpretations of this statute exist with respect to claims against the FSLIC as a receiver. In *North Mississippi Savings & Loan Ass'n v. Hudspeth*, 756 F.2d 1096, 1102 (5th Cir.1985), *cert. denied*, 474 U.S. 1054, 106 S.Ct. 790, 88 L.Ed.2d 768 (1986), the Fifth Circuit found that "resolution of even the facial merits of claims ... would delay the receivership function of distribution of assets." The *Hudspeth* court found such a delay to be a " 'restraint' within the scope of the statute," and held that federal courts lack subject matter jurisdiction over these claims. *Id.; see also Chupik Corporation v. FSLIC*, 790 F.2d 1269, 1270 (5th Cir.1986); *Godwin v. FSLIC*, 806 F.2d 1290, 1292 (5th Cir.1987). The Seventh Circuit agrees with the Fifth, *see Lyons Saving & Loan Ass'n v. Westside Bancorporation, Inc.*, 828 F.2d 387 (7th Cir.1987) (available on LEXIS, Genfed lib., USAPP file), as have the majority of district courts, *see, e.g., FSLIC v. Hall Whispertree Assoc.*, 653 F.Supp. 148 (N.D.Tex.1986); *First Financial Savings & Loan of El Dorado v. FSLIC*, 651 F.Supp. 1289 (E.D.Ark.1987); *FSLIC v. Quality Inns, Inc.*, 650 F.Supp. 918 (D.Md.1987); *Sunrise Savings & Loan Ass'n v. LIR Development Co.*, 641 F.Supp. 744 (S.D.Fla.1986).

The Fifth Circuit's concern, however, is misplaced. The Fifth Circuit's emphasis on delay is well-founded, *Hudspeth*, 756 F.2d at 1101, but its holding requiring exhaustion of administrative remedies before judicial review, *id.* at 1102–03, actually results in a longer delay of the liquidation process than initial court resolution of a creditor's claim. *See Morrison-Knudsen*

*Co. Inc. v. CHG Intern, Inc.*, 811 F.2d 1209, 1216 (9th Cir.1987) (noting this inconsistency). If claims against the FSLIC as a receiver are to be heard in an administrative process, and not in a federal court, some other indicator of congressional intent must be found.

The Ninth Circuit discovered that indicator. The *Morrison-Knudsen* court first looked at the nature of court adjudication. *Morrison-Knudsen*, 811 F.2d at 1217. The court next compared judicial adjudication with the court's own non-descriptive understanding of an ordinary receiver's powers and functions, and concluded that court adjudication does not affect the powers and functions of an ordinary receiver. *Id.* The Ninth Circuit reasoned, therefore, that unless Congress gave the FSLIC powers greater that those of an ordinary receiver, court adjudication of claims against the FSLIC as a receiver would not restrain or affect the powers and functions of the FSLIC. *Id.*

The *Morrison-Knudsen* court believed the only receiver power different from that of an ordinary receiver which court adjudication would restrain or affect would be the power to adjudicate claims. *Id.* at 1217. If Congress gave the FSLIC this authority, the Ninth Circuit reasoned, then § 1464(d)(6)(C) prevents a federal court from hearing claims against the FSLIC as a receiver. *Id.* at 1217–18. The court perused the entire banking statutory schema and found that Congress did not give the FSLIC this authority. *Id.* at 1222. Thus, the *Morrison-Knudsen* court held that court adjudication of claims against the FSLIC as a receiver does not affect or restrain the powers and functions of the FSLIC. *Id.* After examining the *Morrison-Knudsen* framework, this court disagrees.

I. THE QUESTION OF WHETHER CONGRESS GAVE THE FSLIC THE POWER TO ADJUDICATE CLAIMS NECESSARILY NEEDS TO BE RESOLVED.

The FSLIC maintains that this case can be resolved without reaching the issue of whether Congress intended to allow the FSLIC to adjudicate claims. This argument centers around the distinction between the powers of a court appointed receiver and a non-court appointed receiver. While a court-appointed receiver cannot distribute the assets of the receivership without court approval, Am Jur 2d, Receivers, § 2, a non-court appointed receiver, one who is appointed by a government agency, often does have this power, *id.*, § 185. The FSLIC maintains, therefore, that any court adjudication of claims against a non-court appointed receivership necessarily restrains or affects the receiver's power to utilize it discretion in distributing the receivership's assets.

The FSLIC notes that in this case it is a non-court appointed receiver with the discretionary power to distribute assets. The FHLBB put the FSLIC in charge of this failed bank. *See* 12 U.S.C. § 1464(d)(6); 12 C.F.R. §§ 547.1–547.3. Congress authorized the FSLIC to utilize its discretion in functioning as a receiver, directing the FSLIC to liquidate the failed bank or to proceed as it deems appropriate and in the best interests of the association, its depositors and the FSLIC itself. 12 U.S.C. § 1729(b).

Because the FSLIC is a non-court appointed receiver with the discretionary authority to distribute the receivership's assets, the FSLIC maintains that court adjudication of claims will restrain or affect this FSLIC receivership power. The FSLIC notes that it, like any litigant, could not disobey a court order. They argue that in deciding the existence and amount of a claim, a court in essence tells the receiver (the FSLIC) either to utilize some of the bank's assets to pay the claim or to use the assets elsewhere because it is not to pay this claim. They further maintain that this would impinge upon the FSLIC's power to use its discretion in distributing the bank's assets, thus restraining a FSLIC receivership power in violation of § 1464(d)(6)(C). Thus, the FSLIC believes the issue of whether the FSLIC has authority to adjudicate claims need not be reached.

While seeing some merit in this argument, this court still finds the need to address the adjudicative authority issue. Even if the FSLIC has complete discretion in distributing a failed bank's assets, the validity of claims asserted against the FSLIC as a receiver still would need to be determined. Congress authorized the FSLIC only to pay *valid* creditor claims. 12 U.S.C. § 1729(b). For obvious constitutional reasons, the FSLIC in exercising its discretion cannot indiscriminately decide which claims are valid. Thus, before the FSLIC can pay any claim, some determination of its validity must be made. The question of whether the FSLIC or a court makes this determination, therefore, is necessarily before this court.

## II. CONGRESS INTENDED TO CHANNEL CLAIMS AGAINST A BANK IN RECEIVERSHIP THROUGH AN ADMINISTRATIVE PROCESS OVER WHICH THE FSLIC AND FHLBB PRESIDE.

This court finds that Congress vested subject matter jurisdiction in the FSLIC to hear all claims against that agency in its capacity as a receiver. *See Lyons Savings and Loan Ass'n v. Westside Bancorporation, Inc.*, 636 F.Supp. 576, 580 (N.D.Ill. 1986), *aff'd*, 828 F.2d 387 (7th Cir.1987); *Sunrise Savings and Loan Ass'n v. L.I.R. Development Company*, 641 F.Supp. 744, 746 (S.D.Fla.1986). This conclusion is reached through an examination of the statutory language, legislative history, and the FHLBB regulations surrounding the FSLIC's creation.

Through 12 U.S.C. § 1729(d) Congress gave the FSLIC plenary power to act as a receiver. The powers enumerated in this section include the adjudicative authority "to settle, compromise or release claims in favor or against the insured institutions." 12 U.S.C. § 1729(d); *see FSLIC v. Oldenburg*, 658 F.Supp. 609, 611 (D.Utah 1987) (finding § 1729(d) gives the FSLIC adjudicative power and rejecting *Morrison-Knudsen*'s contention that the agency lacked such authority); *Lyons Savings & Loan Ass'n*, 636 F.Supp. at 580 (same interpretation of § 1729(d)). Thus, a fair reading of § 1729(d) indicates the FSLIC has the power to adjudicate claims.

This finding is further supported by the legislative history surrounding the analogous Federal Credit Union Act, 12 U.S.C. §§ 1751 *et seq.*, which indicates that Congress intended the powers of a receiver to include the authority to adjudicate claims. The National Credit Union Administration Board ("NCUAB") oversees credit unions in a similar manner as the FSLIC and FHLBB oversee savings and loan associations. *See Morrison-Knudsen*, 811 F.2d at 1219 n. 3 (noting similarity). The NCUAB has authority to appoint a "liquidating agent" in cases of insolvency. 12 U.S.C. §§ 1766, 1783, 1787. Congress has authorized this liquidation agent "to receive, examine, and pass upon all claims against a federal credit union in liquidation." 12 U.S.C. § 1766(b)(3). The companion Senate Report provides that these enumerated powers "are similar to those which *are customarily presented in other types of liquidations*, and would *authorize, for example, ... the receipt and adjudication of claims*." S.Rep. No. 1647, 79th Cong., 2d Sess. 2, *reprinted in* 1946 U.S.Code Cong.Serv. 1323, 1324 (emphasis added).

In its role as a receiver, and, hence, in its role as an adjudicator, the FSLIC is subject only to FHLBB regulation. The FHLBB has established the administrative process governing the adjudication of claims against the bank in receivership. *See* 12 C.F.R. §§ 548, 549. This administrative process gives the FSLIC the power to allow or disallow any claim, 12 C.F.R. § 549.5-1(b)(2), and its decision is subject to review by the FHLBB, 12 C.F.R. § 549.1(b)(3).

When Congress authorizes an agency to make rules covering a certain field, that agency's regulations are valid and must be followed by a federal court unless they are "arbitrary, capricious, or manifestly contrary to the statute." *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). Congress has given the FHLBB "power to make rules and regulations for the ... liquidation, and

dissolution of associations, ... and for the conduct of [FSLIC] receiverships." 12 U.S.C. § 1464(d)(11). This court has already mentioned that Congress intended the FSLIC as a receiver to have adjudicative authority. The FHLBB regulations governing the FSLIC pass the *Chevron* test and are valid. *Accord, Morrison-Knudsen,* 811 F.2d at 1217. They must be applied here.

Contrary to the Ninth Circuit, the FSLIC's authority to allow and disallow claims is an adjudicative power. *But see Morrison-Knudsen,* 811 F.2d at 1218 (arguing that the power to allow or disallow a claim is the power to determine *"whether a dispute exists,"* not the power to *"resolve the dispute with the force of law")* (emphasis supplied in original). In an interpretation of a similarly worded statute, the Supreme Court found the power to "allow claims, disallow claims or reconsider claims" to be an adjudicative power. *Katchen v. Landy,* 382 U.S. 323, 329–300, 86 S.Ct. 467, 472–73, 15 L.Ed.2d 391 (1966) (interpreting 11 U.S.C. § 11a(2) of the old Bankruptcy Act of 1938). The *Katchen* Court ruled that "[t]he whole process of proof, allowance, and distribution is, shortly speaking, an adjudication of interests claimed." *Id.* at 329, 86 S.Ct. at 473 (citing *Gardner v. State of New Jersey,* 329 U.S. 565, 574, 67 S.Ct. 467, 472, 91 L.Ed. 504 (1947)). Under this authority, the FSLIC's process of proof, allowance and distribution is an adjudicative process.

■ A claimant still unsatisfied after appealing to the FHLBB can seek judicial review. Under the FHLBB's regulations, the FSLIC's disallowance of a claim is final unless the FHLBB decides to allow the claim on the basis of the claimant's written request for relief. *See* 12 C.F.R. § 549.5-1(b)(2). This final disallowance is an agency action within the meaning of § 702 of the Administrative Procedure Act, 5 U.S.C. § 702, and, thus, is subject to judicial review under that section.

■ When Congress provides administrative remedies to a claimant, concerns over judicial economy and deference to the expertise of an agency's administrative tribunal require the claimant to pursue all administrative remedies prior to requesting relief in court. *Jean v. Nelson,* 711 F.2d 1455, 1505–06 (11th Cir.1983); *Haitian Refugee Center v. Smith,* 676 F.2d 1023, 1033 (5th Cir.1982). In giving the FSLIC the power to create an administrative process, Congress has provided the defendants with administrative remedies. The defendants must pursue all of their administrative remedies before this court will hear their counterclaims.

■ Defendants note, however, that the requirement of exhausting one's administrative remedies is inadequate if the administrative process unreasonably delays the adjudication of a claim resulting in a claimant suffering irreparable injury. *See Deltona Corp. v. Alexander,* 682 F.2d 888, 893 (11th Cir.1982). They argue that if their counterclaims are dismissed, the FSLIC will be unchallenged in this mortgage foreclosure action. If successful, the FSLIC would be free to sell the property while the defendants determine their lien preferences in the FSLIC administrative system. Once the property is sold to a third party, the defendants believe they would have no recourse to satisfy their claims secured by their liens.

While pursuing their claims in the FSLIC administrative process, defendants can avoid any injury. Before filing their claims with the FSLIC, the defendants can file a "notice of lis pendens" in the Monroe county clerk's office. Fla.Stat.Ann. § 48.-23(1)(a) (West 1987). As § 48.23(1)(b) provides, "the filing of such notice of lis pendens shall constitute a bar to the enforcement against the property described in the notice of all interests." *Id.* Even if the FSLIC were successful in this action and sold the property in question to a third party, the filing of the notice of lis pendens would prevent the third party from enforcing its rights against the defendants, who, therefore, would not be injured.

### III. THE EXCEPTION CLAUSE IN SECTION 1464(d)(6)(C) DOES NOT GRANT THIS COURT JURISDICTION OVER THE DEFENDANTS' COUNTERCLAIMS.

Defendants argue that the FSLIC has waived its right to pursue the counter-

claims in its own administrative process because they initiated this action in court. They rely upon the "except at the instance of the Board" language of § 1464(d)(6)(C), arguing that this clause indicates the congressional intention to allow a federal court to hear the entire case, including all counterclaims, when the FSLIC brings an action.

■ Defendants' argument fails because Congress never intended to have claims brought by the FSLIC as a receiver and claims asserted against the FSLIC as the receiver to be heard together. With respect to claims against the FSLIC as a receiver, Congress intended to have these claims resolved through administrative adjudication. *See* Section II., *supra.* As to claims on behalf of the FSLIC as receiver, Congress never created an administrative system to adjudicate these claims; therefore, the FSLIC has no choice but to bring these claims in a court. Congress did specifically grant the FSLIC the power to sue. *See* 12 U.S.C. §§ 1725–1730. Through this power, the FSLIC asserts claims on behalf of a failed bank. Section 1464(d)(6)(C)'s exception clause merely grants the federal court jurisdiction to hear these claims, brought at the "instance" of the FSLIC. This court, therefore, only has subject matter jurisdiction to hear the claims brought by the FSLIC. *Cf. Hudspeth,* 756 F.2d at 1103 (dismissing counterclaim because defendant did not exhaust administrative remedies without interpreting this exception clause).

## IV. DEFENDANTS' DUE PROCESS CHALLENGE IS NOT RIPE.

■ Defendants argue that their counterclaims under state law are protected property rights, safeguarded by the due process clause of the fourteenth amendment. In noting that the FSLIC's administrative process provides neither the opportunity to present testimony nor the chance to cross examine witnesses, and that an interested party is the adjudicator, defendants make a strong argument that this administrative adjudication deprives them of their rights to due process of law. *See*

*Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 428–30, 102 S.Ct. 1148, 1153–55, 71 L.Ed.2d 265 (1982); *Ward v. Village of Monroeville,* 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972); *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

Defendants' arguments, however, are premature. A court must decline to reach a due process issue concerning an administrative procedure until after the completion of the administrative process. *Federal Trade Commission v. Standard Oil,* 449 U.S. 232, 242–45, 101 S.Ct. 488, 494–96, 66 L.Ed.2d 416 (1980). A court may hear the issue before the administrative process is complete if the claimants can show that they have sustained, or are in danger of sustaining direct injury as the result of the enforcement of the statutory scheme. *Poe v. Ullman,* 367 U.S. 497, 503–05, 81 S.Ct. 1752, 1755–57, 6 L.Ed.2d 989 (1961). As noted earlier the defendants can avoid any injury by filing a notice of lis pendens. This court, therefore, must refuse to reach the due process issue.

## V. SECTION 1464(d)(6)(C) DOES NOT BAR THIS COURT FROM RULING UPON THE DEFENDANTS' AFFIRMATIVE DEFENSES.

■ This court has jurisdiction to hear the defendants' affirmative defenses. An affirmative defense is not a claim against the FSLIC; it merely alleges that the FSLIC does not have a valid claim. *Compare* Fed.R.Civ.P. 8 *with* Fed.R.Civ.P. 13. As this opinion shows, the FSLIC has the power to determine the validity of claims asserted against it as a receiver. The FSLIC, however, does not have the power to determine the validity of the claims it asserts on behalf of an insured institution. When the FSLIC needs the validity of these claims determined, it initiates a lawsuit. As with any lawsuit, a court determines the validity of claims taking into account both parties' arguments. This time-honored principal is not disturbed because the FSLIC is the plaintiff. This court, therefore, refuses to dismiss the defendants' affirmative defenses.

## CONCLUSION

This court is not unsympathetic to the defendants' desire to avoid duplicative litigation. Nonetheless, this court's power to try cases, indeed, its very existence, is subject to the desires of Congress. With respect to claims against the FSLIC as a receiver for an insured institution, Congress failed to grant this court subject matter jurisdiction.

Accordingly, upon the FSLIC's motion, and the court being fully advised, it is

ORDERED AND ADJUDGED that the motion to dismiss be, and the same is, GRANTED as to the counterclaims of defendants Marathon Building, Bracewell, Jenkins, Ruwell and Patent Scaffolding.

FURTHER ORDERED AND AD-JUDGED that the motion to dismiss be, and the same is, DENIED as to the affirmative defenses of defendants Marathon Building, Bracewell, Jenkins, Ruwell, Patent Scaffolding, Florida 100, King and Liberti.

DONE AND ORDERED in chambers at the United States Courthouse, Federal Courthouse Square, Miami, Florida, this 7th day of October, 1987.