**LYONS SAVINGS AND LOAN ASSOCIATION, an Illinois association, Plaintiff,**

**and**

**Alabama Federal Savings and Loan Association, et al., Intervening Plaintiffs-Appellants,**

**v.**

**WESTSIDE BANCORPORATION, INC., a Delaware corporation, Westside Federal Savings and Loan Association, a Washington association, et al., Defendants-Appellees.**

**No. 86–1793.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 9, 1987.

Decided June 5, 1987.

David I. Herbst, Portes, Sharp, Herbst & Kravets, Chicago, Ill., for intervening plaintiff-appellants.

John L. Rogers, III, Hopkins & Sutter, Chicago, Ill., for defendants-appellees.

Before CUMMINGS and FLAUM, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

CUMMINGS, Circuit Judge.

In 1983, Westside Federal Savings & Loan Association made a $35 million loan to Hanalei Development Corp. to finance the construction of condominiums in Hawaii. Westside subsequently sold participation interests in the loan to seven other savings and loan associations while retaining a twenty-percent interest in the loan. Each of the participants advanced their pro rata share of the monies due Hanalei under the loan participation agreement.

Under the terms of the agreement, Westside was designated as the "lead lender" for the loan participants and was authorized to exercise the powers, duties, and responsibilities attendant upon servicing and administering the loan. Paragraph 7 of the agreement gave Westside broad discretion in performing these tasks:

It is agreed that the exclusive right to decide how the loan shall be serviced and what to do and how to do it, when to approve assumptions or similar third party undertakings, when to accelerate the entire balance due on the loan for any reason permissible, when to foreclose or otherwise to acquire the property security and the manner thereof, whether or not to obtain a deficiency judgment, whether or not to bid in at a foreclosure sale and for how much, and how to administer any foreclosed or otherwise acquired real estate or other property, including maintaining, improving, or selling the same, is hereby vested in Seller [Westside], as trustee for all the owners of participation interests hereunder.

As lead lender, Westside held legal title to the loan as trustee for the other participants and was entitled to retain fees for servicing the loan in addition to any default penalties or late charges assessed against Hanalei.

On July 19, 1985, Lyons Savings & Loan Association, of Hinsdale, Illinois, and one of the seven loan participants, filed a complaint against Westside and eight individual principals of Westside in federal district court alleging numerous violations of the federal securities laws and the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968. The basis for the suit was Lyons' charge that Westside had breached the participation agreement by failing to disclose its purchase of an equity interest in the condominiums. Shortly thereafter, on August 30, 1985, the Federal Home Loan Bank Board declared Westside insolvent and pursuant to 12 U.S.C. § 1464(d)(6)(A) appointed the Federal Savings and Loan Insurance Corporation ("FSLIC") as receiver for Westside. The FSLIC was then substituted for Westside as a party to Lyons' action.

On September 25, 1985, six of the other loan participants filed an intervenors' complaint against the FSLIC as receiver for Westside and against the other eight defendants named in the Lyons suit. Their complaint sought a declaration that the intervening loan participants possessed the right to elect a new substitute lead lender, that the lead lender could be elected by the vote of a majority in interest of the participants, and that the new lead lender would have all of the powers, duties and responsibilities previously held by Westside. The intervenors sought no affirmative relief against the FSLIC as receiver or against the receivership estate but, as they concede, granting the declaratory judgment would necessarily mean removing the FSLIC as lead lender.

Pursuant to motion by the FSLIC, the district court dismissed both Lyons' and the intervenors' complaints against the FSLIC as receiver for Westside for lack of subject matter jurisdiction. 636 F.Supp. 576 (N.D. Ill.1986). Relying on 12 U.S.C. §§ 1464(d)(6)(C) and 1729(d), the court held that the claims against Westside set out in both Lyons' and the intervenors' complaints could not be judicially reviewed until after they had first been presented to the FSLIC pursuant to the administrative claims procedure established by the Feder-

al Home Loan Bank Board. The six intervenors have appealed that portion of the district court's order dismissing their complaint.[1]

## I. *Statutory Framework*

The Federal Home Loan Bank Board (the "Bank Board") is the federal authority that regulates and supervises federally insured savings and loan associations to ensure the soundness of their operations for the protection of depositors, creditors, and the general public. See 12 U.S.C. §§ 1437, 1464, and 1724–1730g. The Bank Board also operates and directs the FSLIC, which insures the accounts of eligible institutions. See 12 U.S.C. §§ 1437, 1725(a)–(c), and 1730(k)(1). When the Bank Board determines that an insured savings and loan association is insolvent, it may appoint the FSLIC as receiver of the institution. See 12 U.S.C. §§ 1464(d)(6)(A), 1729(b)–(c). The FSLIC has broad authority to operate the institution, to merge it with another institution, to organize a new institution to take over its assets, to liquidate its assets in an orderly manner, or to make such other disposition of the matter as it deems appropriate. 12 U.S.C. § 1729(b)–(c).

To facilitate the reorganization, operation, or dissolution of a failed institution, judicial review of the FSLIC's actions as receiver is largely prohibited. 12 U.S.C. § 1464(d)(6)(C) provides:

> Except as otherwise provided in this subsection, no court may take any action for or toward the removal of any conservator or receiver, or, except at the instance of the Board, restrain or affect the exercise of powers or functions of a conservator or receiver.

12 U.S.C. § 1729(d) specifically addresses the FSLIC's powers in liquidating an insured institution:

> In connection with the liquidation of insured institutions, the Corporation shall have power to carry on the business of and to collect all obligations to the insured institutions, to settle, compromise, or release claims in favor of or against the insured institutions, and to do all other things that may be necessary in connection therewith, subject only to the regulation of the Federal Home Loan Bank Board....[2]

In 12 U.S.C. § 1464(d)(11), Congress empowered the Bank Board "to make rules and regulations for the ... liquidation, and

---

**1.** Lyons also filed an appeal of the district court's order dismissing its complaint against the FSLIC. Lyons, however, later dismissed its appeal after filing an administrative claim with the FSLIC. The intervenors have also filed an administrative claim with the FSLIC seeking both damages arising out of Westside's actions in connection with the Hanalei loan and the removal of the FSLIC from its position as lead lender. Unlike Lyons, the intervenors have sought to pursue their claims simultaneously through both the administrative and judicial processes.

**2.** 12 U.S.C. § 1729(d) was amended by § 122(g) of the Garn-St. Germain Depository Institutions Act of 1982, Pub.L. No. 97–320, 96 Stat. 1469, 1482–1483. Section 141(a)(6) of the Act stipulated that the amendment effected by § 122(g) would expire three years after the date of enactment, and § 1729(d) would then read as it had prior to the 1982 amendment. 96 Stat. at 1489. Congress first extended the expiration date to April 15, 1986, Pub.L. No. 99–120, § 6(a), 99 Stat. 502, 504; then to July 15, 1986, Pub.L. No. 99–278, 100 Stat. 397; then to September 15, 1986, Pub.L. No. 99–400, 100 Stat. 902; and finally to October 13, 1986, Pub.L. No. 99–452, 100 Stat. 1140. A bill to extend the termination date until June 30, 1987, was not acted upon,

H.R. 5711, 99th Cong., 2d Sess., 132 Cong.Rec. H11,118 (Oct. 15, 1986), and thus the 1982 amendment expired on October 13, 1986. As a result, the final clause of § 1729(d) now reads "subject only to the regulation of the court or other public authority having jurisdiction over the matter" instead of "subject only to the regulation of the Federal Home Loan Bank Board...."

The expiration of the 1982 amendment, however, does not affect this litigation. Section 141(b) of the 1982 Act expressly provided that the termination of any amendment made by the Act would have "no effect on any action taken or authorized while such amendment was in effect." 96 Stat. at 1489. The FSLIC was appointed receiver of Westside on August 30, 1985, and the intervenors' complaint which forms the basis for this appeal was filed on September 25, 1985, while the 1982 amendment was in effect.

Even if we were to review this case under the statutory language currently in effect, it would not substantively alter our analysis. Westside is a federal savings and loan association, and pursuant to 12 U.S.C. § 1464(d)(6)(A), the Bank Board has "exclusive power and jurisdiction to appoint a ... receiver."

dissolution of associations ... and for the conduct of conservatorships and receiverships." Pursuant to this directive, the Board has promulgated regulations establishing an administrative procedure for initially adjudicating claims against the assets of a savings and loan association in receivership. As receiver, the FSLIC is authorized to approve "any seasonably filed claim proved to its satisfaction." 12 C.F.R. §§ 549.4(b), 549.5–1(b)(2) (federal associations); *id.* § 569a.8(b) (insured institutions other than federal associations). The FSLIC may wholly or partially disallow any claim not so proved, but must notify the claimant of the disallowance and the reasons why. *Id.* The FSLIC's determination is subject to administrative review by the Bank Board, *id.* §§ 549.4(b), 549.5–1(b)(2), 569a.8(d), and a claimant may seek judicial review of the Board's final decision in federal court under the provisions of the Administrative Procedure Act, 5 U.S.C. §§ 701–706.[3]

## II. *Discussion*

The FSLIC contends that it has exclusive jurisdiction to adjudicate claims against the assets of an insolvent savings and loan association placed in a FSLIC receivership and that judicial oversight is limited to reviewing the agency's determinations under the Administrative Procedure Act. The intervenors respond that the declaratory relief which they seek would not "restrain or affect" the FSLIC in the exercise of its powers and functions as receiver in contravention of § 1464(d)(6)(C), or otherwise adversely affect the orderly liquidation of Westside. Furthermore, they argue that the administrative claims procedure on which the FSLIC relies applies only to monetary claims against a failed institution and hence has no bearing on their claim for non-monetary, declaratory relief.

The Fifth Circuit has consistently adopted the position advanced by the

FSLIC. In *North Mississippi Savings & Loan Ass'n v. Hudspeth*, 756 F.2d 1096 (5th Cir.1985), certiorari denied, 474 U.S. 1054, 106 S.Ct. 790, 88 L.Ed.2d 768, that court held that the district court was without subject matter jurisdiction over an action by an ex-president of a failed institution to enforce a deferred compensation agreement against the institution. In concluding that Hudspeth was required to petition the Bank Board for review of the FSLIC's termination of the compensation contract before seeking judicial review under the Administrative Procedure Act, the court emphasized that in enacting Sections 1464(d)(6)(C) and 1729(d):

> Congress wanted the FSLIC to be able to act quickly and decisively in reorganizing, operating, or dissolving a failed institution, and intended that the FSLIC's ability to accomplish these goals not be interfered with by other judicial or regulatory authorities.

*Id.* at 1101. In setting aside the contract with Hudspeth, the FSLIC was unquestionably exercising its powers as a receiver, and any court ruling that the contract was enforceable would "restrain or affect" the FSLIC's powers as a receiver in violation of § 1464(d)(6)(C).

*Chupik Corp. v. FSLIC*, 790 F.2d 1269 (5th Cir.1986), involved a failed savings and loan association which had extended loans to finance the construction of condominium projects in Dallas. To secure the loans, the borrowers gave first mortgage liens to the institution under deeds of trust. Chupik Corp. had supplied materials for the construction of the condominiums, and when it was not paid, it perfected its materialman's lien rights under Texas law. Upon being appointed receiver, the FSLIC began liquidating the institution's assets and through foreclosure of its deeds of trust acquired the properties upon which Chupik claimed materialman's liens. Chupik filed a suit against the FSLIC in district court seeking

---

**3.** In late 1985, the Bank Board proposed new comprehensive regulations setting out specific procedures relating to the disposition of claims, the priority of claims, and appeals from the receiver's determinations with respect to claims. 50 Fed.Reg. 48,969 (Nov. 27, 1985). The Bank Board has yet to take any final action concerning these rules. In light of the Ninth Circuit's recent decision in *Morrison-Knudsen Co. v. CHG International, Inc.*, 811 F.2d 1209 (9th Cir.1987), discussed *infra*, it is unlikely that there will be any developments in the near future.

to foreclose the materialman's liens and seeking a declaratory judgment regarding competing lien claims under Texas law. The Fifth Circuit affirmed the district court's dismissal of Chupik's action, requiring it to exhaust its administrative remedies before pursuing its claims in federal court. The court was not swayed by the fact that Chupik was not a creditor of either the failed institution or the FSLIC, or that the FSLIC lacked the authority to grant foreclosure of Chupik's materialman's liens. Construing both the scope and purpose of § 1464 broadly, the court emphasized that " 'resolution of even the facial merits of claims outside of the statutory reorganization process' " would delay the receiver's function of distributing the institution's assets and thus would impermissibly restrain the FSLIC in exercising its powers and functions under § 1464. *Id.* at 1270 (quoting *Hudspeth,* 756 F.2d at 1102).

The Ninth Circuit, in a recent opinion, *Morrison-Knudsen Co. v. CHG International, Inc.,* 811 F.2d 1209 (9th Cir.1987), has rejected the position of the FSLIC and the Fifth Circuit. In a sweeping decision it held that the FSLIC has no power to adjudicate creditor claims. Because § 1464(d)(6)(C) prohibits a court from "restraining or affecting" only those powers or functions which a receiver validly possesses, it reasoned that judicial adjudication of creditor claims in the first instance would not run afoul of that section. The

court similarly dispensed with § 1729(d), concluding that while it prevents a court from interfering with the FSLIC's power "to settle, compromise, or release claims in favor of or against the insured institutions," it does not preclude a federal court from adjudicating claims.

The Fifth Circuit in *Hudspeth* expressly held to the contrary that "adjudication *is* a receivership function in FSLIC receiverships." 756 F.2d at 1102 n. 5 (emphasis in original). That court believed that it was both necessary and appropriate to defer to the view of the Bank Board, as reflected in the regulations, that "the FSLIC is empowered to decide claims as part of its receivership function." *Id.* at 1103. See *Chevron U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (Agency regulations pursuant to express congressional delegation "are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute.").

This appeal requires us to evaluate the competing positions of the Fifth and Ninth Circuits.[4] Our ability to do so, however, is severely hindered by the fact that the intervenors have failed to challenge the power of the FSLIC to adjudicate claims. They argue that the administrative claims process is limited to monetary claims against a failed institution, but they concede the FSLIC's authority to adjudicate those claims.[5] We are extremely hesitant to ap-

---

**4.** The district courts have uniformly adopted the position of the Fifth Circuit in *Hudspeth* and *Chupik.* See, *e.g., Acquisition Corp. of America v. Sunrise Savings & Loan Ass'n,* 659 F.Supp 138 (S.D.Fla.1987) (rejecting Ninth Circuit's position in *Morrison-Knudsen* in favor of Fifth Circuit approach); *FSLIC v. Oldenburg,* 658 F.Supp. 609 (D.Utah 1987) (same); *FSLIC v. Hall Whispertree Assoc.,* 653 F.Supp. 148 (N.D.Tex.1986); *First Financial Savings & Loan of El Dorado v. FSLIC,* 651 F.Supp. 1289 (E.D.Ark.1987); *Kohlbeck v. Kis,* 651 F.Supp. 1233 (D.Mont.1987); *FSLIC v. Quality Inns, Inc.,* 650 F.Supp. 918 (D.Md.1987); *Baer v. Abel,* 649 F.Supp. 25 (W.D.Wash.1986); *Baer v. Abel,* 648 F.Supp. 69 (W.D.Wash.1986); *Colony First Federal Savings & Loan Ass'n v. FSLIC,* 643 F.Supp. 410 (C.D.Calif.1986); *Sunrise Savings & Loan Ass'n v. LIR Development Co.,* 641 F.Supp. 744 (S.D.Fla.1986); *Politser v. Rosch,* No. 86–C–0776 (N.D.Ill. June 26, 1986) [Available on WESTLAW, DCT database]; *First*

*American Savings Bank v. Westside Federal Savings & Loan Ass'n,* 639 F.Supp. 93 (W.D.Wash. 1986), appeal dismissed for want of jurisdiction, 811 F.2d 1209 (9th Cir.1987); *Manning Savings & Loan Ass'n v. Federal Home Loan Bank Board,* No. 83–C–757 (N.D.Ill. Jan. 4, 1984) [Available on WESTLAW, DCT database]; *First Savings & Loan Ass'n v. First Federal Savings & Loan Ass'n,* 531 F.Supp. 251 (D.Hawaii 1981).

**5.** There is no reason why the intervenors should not have been expected to make such an argument. In *Hudspeth* the Fifth Circuit expressly considered the creditor's argument that the adjudication of claims against a debtor was not a proper receivership function. 756 F.2d at 1102. Moreover, at oral argument counsel for the intervenors repeatedly maintained that they were not challenging the FSLIC's exclusive jurisdiction to adjudicate claims, but rather believed that their claim was distinguishable from those

prove one approach over the other without the benefit of any briefing or oral argument regarding the FSLIC's powers, not to mention the view of the district court on this critical issue.

The Bank Board's regulations have contained a provision for the adjudication of claims since 1956. See 21 Fed.Reg. 4548, 4553 (June 26, 1956) (codified at 24 C.F.R. § 149.4 (1956)). Congress has made several amendments to the statutory framework over the course of the past thirty years, see, *e.g.,* Garn-St. Germain Depository Institutions Act of 1982, Pub.L. No. 97–320, § 122(g), 96 Stat. 1469, 1482–1483 (amending § 1729(d)), but has never limited the FSLIC's authority to adjudicate claims. The Ninth Circuit itself recognized the significant impact of its decision, acknowledging the FSLIC's grave concern over the currently pressing problems in the thrift industry and according great respect to the FSLIC's need to maintain its reserves through prompt liquidations and rapid recoupment of its insurance payouts. *Morrison-Knudsen,* 811 F.2d at 1216.

This Court was recently faced with a similar situation in *Hospital Corp. of America v. F.T.C.,* 807 F.2d 1381, 1392 (7th Cir.1986). In that case the appellant asked that we hold the FTC unconstitutional because its members exercise executive powers yet can be removed by the President only for cause. However, that argument occupied only three pages of the appellant's lengthy opening brief and one page of its reply brief. Under those circumstances, we held that "we cannot be forced to consider far-reaching constitutional contentions presented in so offhand a manner." *Id.;* see *Bonds v. Coca-Cola Co.,* 806 F.2d 1324, 1328 (7th Cir.1986); *Hershinow v. Bonamarte,* 735 F.2d 264, 266 (7th Cir.1984). With all due respect to the Ninth Circuit, we cannot adopt its revolutionary result, invalidating an important agency power authorized by regulations for over thirty years, without at least first being adequately presented with the arguments on the other side.

Proceeding, then, on the assumption that the FSLIC is empowered to adjudicate claims, we consider the arguments presented by the intervenors on appeal. Initially they contend that a declaratory judgment in their favor would not "restrain or affect" the FSLIC in the exercise of its powers as receiver, or otherwise adversely affect the orderly liquidation of Westside. They base their argument on Paragraph 14 of the participation agreement which provides as follows:

> In the event of the insolvency of Seller [Westside], ... or the appointment by any public or supervisory authority of any person in charge of the same or its assets, ... or the issuance by an appropriate monitoring or supervisory authority of a cease and desist order or its equivalent against Seller or its directors and officers involving the safety, soundness or financial viability of Seller, it is agreed that Buyer [intervenors] shall automatically succeed to all rights, title, status and responsibilities which Seller may have regarding the holding and servicing of the loan and advances, and have an option to exercise all of the powers hereinabove granted to Seller, and have the option to designate itself or any person or firm in its discretion to exercise such powers in a manner consistent with respective participation interests of all owners hereunder as such interests may appear.

According to the intervenors, Westside was automatically removed from its position as lead lender by virtue of this paragraph as early as April 18, 1985, the date on which the Bank Board issued its cease and desist order, and certainly by August 30, 1985, the date on which the Board declared Westside insolvent and appointed the FSLIC as receiver. Because Westside was not the lead lender on the date the receivership came into existence, the intervenors argue that the selection of a new lead lender cannot be said to interfere with or restrain the FSLIC in its functions as receiver of Westside.

before the Fifth Circuit in *Hudspeth* and *Chupik* and thus fell outside of the FSLIC's jurisdiction.

The FSLIC quite naturally contests the intervenors' interpretation of Paragraph 14. It argues that it succeeded to Westside's position as lead lender upon being appointed receiver and, as the intervenors concede, has as a matter of fact, though perhaps not of right, been performing the functions of lead lender since that time. It further contends that a literal construction of the loan participation agreement yields a nonsensical result. Paragraph 14 provides that the Buyer "shall automatically succeed" to all of the rights and responsibilities of the Seller as lead lender. However, because there were seven participants in the Hanalei loan other than the Seller, Westside, each of whom had executed an identical agreement with Westside, an automatic removal of Westside would necessarily mean that all seven automatically succeeded as lead lender. This being impossible, the FSLIC argues that the most logical result was for it to continue to serve as lead lender, particularly in light of the fact that Westside was and continues to be the record owner of the deeds of trust to the property involved. In addition, the FSLIC points to the language in Paragraph 14 which speaks of the Buyer's having "an option to exercise all of the powers hereinabove granted to Seller." The FSLIC claims that none of the intervenors have exercised that option and hence have waived any rights of removal under the agreement. Finally, the FSLIC questions whether, if effective, the automatic removal provision in Paragraph 14 would be valid as against it, since the provision would interfere with the performance of its receivership duties. See generally *United States v. Mississippi Valley Generating Co.*, 364 U.S. 520, 563–66, 81 S.Ct. 294, 316–17, 5 L.Ed.2d 268.[6]

Thus although the intervenors believe that Westside was automatically removed as lead lender upon the appointment of the FSLIC as receiver, and that the FSLIC consequently has no right to continue to act as lead lender, the FSLIC vigorously contends just the opposite. As a result, the question before us becomes precisely who should decide this initial dispute, a federal district court or the FSLIC through the Bank Board's administrative claims procedure.

The FSLIC clearly possesses the power to serve as the lead lender and to service and administer the Hanalei loan. 12 U.S.C. § 1729(b) authorizes the FSLIC "to take over the assets of and operate" a failed federal savings and loan association. See 12 U.S.C. § 1729(c) (same power with respect to insured institutions other than federal associations). 12 U.S.C. § 1729(d) similarly empowers the FSLIC, in connection with the liquidation of an insured institution, "to carry on the business of" that institution. The regulations further specify that the FSLIC may do anything it considers "desirable or expedient to carry on the association's business consistent with [its] appointment, and to conserve and preserve the association's assets and property" and may "exercise all rights and powers of the association." 12 C.F.R. § 549.-3(a) (incorporating 12 C.F.R. § 548.2(a), (b)) (federal associations); *id.* § 569a.6(a)(1)–(2) (insured institutions other than federal associations).

Furthermore, if we were to direct the district court to decide the issue of precisely who is entitled to serve as lead lender and it found in favor of the intervenors, thereby displacing the FSLIC from acting as lead lender, such a result would perhaps restrain and certainly affect the FSLIC in the exercise of its powers and functions in liquidating Westside. The intervenors attempt to distinguish this case from *Hudspeth* and *Chupik* on the ground that they are not seeking any relief from the assets of Westside. The truth of this proposition, however, turns on the resolution of the lead lender dispute. Valuable assets attend the position of lead lender, evidenced by the fact that the intervenors are willing to wage this legal battle in an attempt to

---

**6.** Section 365(e) of the Bankruptcy Code invalidates *ipso facto* or bankruptcy termination clauses which permit one contracting party to terminate or even modify an executory contract or unexpired lease in the event of the bankruptcy of the other contracting party. 11 U.S.C. § 365(e); see 2 Collier on Bankruptcy ¶ 365.06, at 365–46 to –47 (1987).

wrest control of the lead lender position from the FSLIC. For example, Paragraph 7 of the loan participation agreement, which is reproduced in full at the outset of this opinion, grants the lead lender broad powers to determine whether to accelerate the loan, whether to foreclose on the loan, whether to take a deed in lieu of foreclosure, whether to obtain a deficiency judgment, and how ultimately to dispose of the property. This power to control both the timing and the terms of the disposition of the entire loan is obviously of substantial value when the loan is in default and non-performing. Precisely because the loan is non-performing, it is unlikely that any of the loan participants could sell their participation interests individually for anything but a fraction of their true value. Thus if one of the intervenors were to be appointed lead lender, the FSLIC could be severely hindered in its ability to liquidate its rather significant interest in the Hanalei loan as quickly as possible. Moreover, because Westside was acting as lead lender in connection with a number of large loans at the time the FSLIC was appointed as receiver, permitting all of the loan participants to appoint new lead lenders would dramatically affect the FSLIC's ability to liquidate Westside's assets in an expeditious and efficient manner.

In addition to the ability to control the disposition of the loan, under the loan participation agreement the lead lender is entitled to a fee for servicing the loan in the form of an increased interest rate on its participation interest in the loan, and to any default penalties, late charges, and other amounts payable by the borrower and not otherwise provided for in the agreement. The intervenors argue that because the Hanalei loan is non-performing, no interest is being paid to any of the participants and no fee will therefore be due the lead lender. However, even though the loan has been defaulted, interest is being accrued on the loan, a greater proportion of which is being allocated to the lead lender. The fact that no interest is currently being paid on the loan does not mean that the lead lender's right to a higher interest rate on its participation interest is without value. Presumably when the loan is foreclosed and the property is ultimately disposed of, the lead lender's share of the proceeds will reflect that higher rate of accrued interest. Thus the right to the servicing fee and other charges payable by the borrower represents another valuable asset associated with the position of lead lender.

The Fifth Circuit has broadly interpreted the scope of § 1464(d)(6)(C)'s prohibition on court action that "restrains or affects" the exercise of the FSLIC's powers and functions as receiver. *Hudspeth* and *Chupik* both advanced the proposition that the adjudication of any claim outside of the administrative claims process would delay the receivership function of distribution of assets by preventing the FSLIC from determining when and how much to pay other claimants, functions the court found inherent in the power to liquidate, until the parallel litigation had been terminated, and would therefore constitute a "restraint" within the scope of the statute. 756 F.2d at 1102; 790 F.2d at 1270. The Fifth Circuit essentially found any kind of judicial interference with the FSLIC's duties as receiver when liquidating a failed institution unacceptable "[g]iven the overriding Congressional purpose of expediting and facilitating the FSLIC's task as receiver." *Hudspeth*, 756 F.2d at 1102; see *First American Savings Bank v. Westside Federal Savings & Loan Ass'n*, 639 F.Supp. 93, 98 (W.D.Wash.1986), appeal dismissed for want of jurisdiction, 811 F.2d 1209 (9th Cir.1987) (very pendency of federal court action affects the ability of FSLIC to adjudicate and liquidate the assets of failed institution); *Murdock-SC Associates v. Beverly Hills Federal Savings & Loan Ass'n*, 624 F.Supp. 948, 954 (C.D.Cal.1985) (§ 1464(d)(6)(C) prohibits courts "from not only restraining but *affecting* not only the powers but also the mere *functions* of receivers of failed savings and loan associations") (emphasis in original).

■ Given the broad interpretation accorded § 1464(d)(6)(C), we agree with the district court's determination that adjudicating the intervenors' claim would "restrain or affect" the FSLIC in its ability to

marshall the assets of Westside, to determine the amount due each of the institution's creditors and claimants, and ultimately to distribute the assets and conclude the liquidation. Before seeking judicial review, the intervenors must first, as they have, see *supra* note 1, file their claim with the FSLIC and pursue it through the established administrative procedures.

The intervenors object, as their second principal argument on appeal, that the Bank Board's administrative claims process was designed solely for monetary claims and hence does not apply to their non-monetary claim for a declaratory judgment. They rely on the fact that the Bank Board's regulations setting out the claims allowance procedure, 12 C.F.R. §§ 549.4, 549.5–1, 569a.8, speak in terms of the "payment" of claims. On the other hand, however, nothing in the regulations expressly prohibits the FSLIC from considering non-monetary claims.[7] In any event, the Fifth Circuit has squarely rejected the intervenors' argument in *Hudspeth* and *Chupik*. In *Hudspeth*, the court held that "resolution of even the facial merits of claims outside of the statutory reorganization process" is impermissible under § 1464(d)(6)(C). 756 F.2d at 1102. In *Chupik*, the court went even further and affirmed the dismissal of an action seeking only a declaratory judgment regarding competing lien claims under Texas law which had been brought by a party who was not a creditor of the FSLIC or the failed institution. We agree with the FSLIC that in determining whether a claim should be routed to the administrative track, the proper focus is on whether the pendency of the action and the relief requested "restrain or affect" the powers or functions of the receiver contrary to § 1464(d)(6)(C) and not on whether there is an express provision in the regulations for non-monetary claims. Furthermore, recognizing a distinction between monetary and non-monetary claims would seriously undermine § 1464(d)(6)(C). Any damages claim can be easily severed into one claim for declaratory relief and another for monetary relief, with the former being pursued in federal court and the latter through administrative channels. As the Fifth Circuit pointed out in *Hudspeth*, such a situation would constitute no less of an interference with the FSLIC's duties as receiver than if the court were to adjudicate the claim for monetary relief.

The intervenors must therefore initially pursue their claim through the Bank Board's administrative claims process. We express no opinion as to the merits of the intervenors' claim, namely who is entitled to serve as lead lender under the loan participation agreement. We merely hold that a federal court is not the proper forum for resolving that question in the first instance. If the intervenors are unhappy with the FSLIC's determination, they may appeal to the Bank Board, and then only after the Board has rendered its final decision may they properly seek judicial review in federal court under the Administrative Procedure Act. The judgment of the district court is affirmed.

---

7. The definition of "claim" appearing in the FSLIC's publication "Procedures for the Administration and Determination of Claims Filed with the FSLIC as Receiver" expressly contemplates claims seeking non-monetary relief. A "claim" is defined as "the existence of a right to payment or an equitable remedy against an association or the Receiver...." Section 1(B)(9), at 3. The "Proof of Claim" form which a claimant must file with the FSLIC specifically refers to "Relief Other Than Monetary Claim" and provides space for a claimant to describe the nature of the relief being sought.