**RESNA ASSOCIATES, LTD., a Limited Partnership of the State of New Jersey, Plaintiff,**

v.

**FINANCIAL EQUITY MORTGAGE CORPORATION and Life Savings and Loan Association of America, Defendants.**

Civ. A. No. 87–933.

United States District Court,
D. New Jersey.

Nov. 17, 1987.

Ira E. Weiner, Weiner & Hiebler, Montville, N.J., for plaintiff.

Robert G. Rose, Pitney, Hardin, Kipp & Szuch, Morristown, N.J., for defendant Life Sav. of America.

## OPINION

LECHNER, District Judge.

This action was originally instituted by Resna Associates, Ltd. ("Resna") in the Superior Court of New Jersey, Law Divi-

sion, Morris County, seeking damages resulting from the refusal of the Financial Equity Mortgage Corporation ("FEMC") to honor a mortgage commitment. Resna also asserted a claim against Life Savings and Loan Association of America ("Life Savings") because allegedly Life Savings was to underwrite the mortgage.

FEMC apparently has not made an appearance in this case. Life Savings filed its Answer, but later removed the action to this Court after the Federal Home Loan Bank Board ("Bank Board") appointed the Federal Savings and Loan Insurance Corporation ("FSLIC") as receiver for Life Savings. FSLIC now moves to dismiss the action for lack of subject matter jurisdiction, asserting that upon the appointment of FSLIC as receiver subject matter jurisdiction rests with FSLIC and the Bank Board. Resna has not opposed the motion.[1] The matter is decided on the basis of the papers submitted, in accordance with Rule 78 of the Federal Rules of Civil Procedure.

*Facts*

Resna is a Limited Partnership of the State of New Jersey, with its offices located in New Jersey. (Complaint, Introduction.) FEMC is a mortgage company apparently doing business in New Jersey. (*See id.*, First Count, ¶ 2.) Life Savings is a federally chartered savings and loan association with its offices located in Illinois. (*Id.*, Second Count, ¶ 2.)

On or about December 28, 1984, Resna entered into a contract for the purchase of certain property located in New Jersey. Resna sought financing from FEMC, and on or about January 14, 1985, FEMC issued a loan commitment to Resna.[2] Resna executed the commitment letter and returned it to FEMC within the specified time period. (*Id.*, First Count, ¶¶ 1–4.)

Resna then proceeded to complete all the other requirements of the mortgage commitment and made various payments to FEMC for application fees and processing costs which included inspections and appraisals of the property. Agents of FEMC appraised the property in question. (*Id.*, First Count, ¶¶ 5–8.) On April 22, 1985, shortly before the closing was to occur, FEMC wrote to Resna advising it would not honor the commitment letter previously issued. (*Id.*, First Count, ¶ 9.)

On February 3, 1986, Resna instituted this action in the Superior Court of New Jersey, Law Division, Morris County. The complaint contains eight counts. The first count is a breach of contract claim against FEMC. The second count is a breach of contract claim against Life Savings, alleging that FEMC was an agent of Life Savings which procured loans to be underwritten by Life Savings. The third count alleges the rejection of the loan and the failure to underwrite the loan transaction were based on racially discriminatory factors. The fourth count appears to be an implied contract claim, alleging detrimental reliance. The fifth count appears to be an equitable fraud claim. Finally, the sixth count alleges FEMC was an agent for Life Savings, and that Life Savings is responsible for all damages caused by FEMC.

The record does not reflect what proceedings took place in state court. According to FSLIC (receiver for Life Savings), FEMC has not made an appearance; Life

1. Defendant's motion to dismiss was filed on October 2, 1987 and was returnable October 26, 1987. According to Rule 12C of the General Rules of the United States District Court for the District of New Jersey, opposition papers were due fourteen days prior to the argument date. Because October 12 was a federal holiday, opposition papers filed on October 13 would have been acceptable.

On October 16, 1987, at approximately 3:00 p.m., the court telephoned plaintiff's attorney, Mr. Weiner, to inquire whether he was opposing defendant's motion, because the court had not received any opposition. Mr. Weiner informed the court that he was opposing the motion, but was not certain whether he would submit his opposition by October 20. The court informed Mr. Weiner such uncertainty with regard to plaintiff's position on the motion would not be acceptable. Mr. Weiner responded in that case, defendant's motion would be unopposed. Notwithstanding, the issuance of this opinion was delayed to November 17, 1987; plaintiff, to the date of this opinion, has not submitted any opposition.

2. Allegedly, Life Savings was to underwrite this loan transaction.

Savings did file an Answer. (Defendant's Brief at 3.)

On February 13, 1987, the Bank Board appointed FSLIC as receiver for Life Savings, pursuant to 12 U.S.C. § 1464(d)(6)(A). (Herbert Aff., ¶ 3 and Ex. A at 1–2.) FSLIC was appointed receiver in part because Life Savings was insolvent. (Herbert Aff., Ex. A at 1.) Also on February 13, 1987, the Bank Board directed FSLIC to liquidate the assets of Life Savings. (Herbert Aff., ¶ 4 and Ex. B at 1.)

On March 13, 1987, FSLIC, as receiver for Life Savings, petitioned this court to remove the action from state court, asserting jurisdiction under 12 U.S.C. § 1730(k)(1)[3]. On October 2, 1987, FSLIC moved to dismiss Resna's complaint for lack of subject matter jurisdiction, or in the alternative, for failure to state a claim upon which relief may be granted. FSLIC argues that after its appointment as receiver, subject matter jurisdiction over any claims against Life Savings, now in receivership, rests exclusively with FSLIC and its supervisory authority, the Bank Board. FSLIC asserts all such claims must be brought through a comprehensive administrative claims procedure established by federal statute and regulations. FSLIC's determination on such claims is then subject to administrative review by the Bank Board, and finally, to judicial review under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* (the "APA"). As indicated, Resna has not opposed FSLIC's motion.

### Discussion

### 1. Question Presented

The question posed by defendant's motion to dismiss is whether Congress intended, in its broad grant of administrative powers to the Bank Board and FSLIC, to give these entities exclusive jurisdiction over creditor claims against insolvent institutions in receivership, subject only to judicial review under the APA.

### 2. Statutory Framework

The Bank Board and FSLIC are part of a network of regulatory bodies established by Congress to guard against and to deal with future failures in the nation's banking institutions. The Home Owners' Loan Act of 1933 ("HOLA"), as amended, 12 U.S.C. §§ 1461–1470, created the Federal Savings and Loan Association System, and subchapter IV of the National Housing Act of 1934 ("NHA"), as amended, 12 U.S.C. §§ 1724–1730, created FSLIC.

Through the HOLA, Congress placed the savings and loan system under the control of the Bank Board. 12 U.S.C. § 1464(a). The HOLA gave the Bank Board broad discretionary powers, including the discretion to appoint a receiver for any institution if the Bank Board determined that one of the statutory grounds, such as insolvency, existed. 12 U.S.C. § 1464(d)(6). The HOLA also authorized the Bank Board to promulgate rules and regulations governing the liquidation of an association and the conduct of receiverships. 12 U.S.C. § 1464(d)(11).

Through the NHA, Congress created FSLIC as a corporation, agency, and instrumentality of the United States, and placed it under the direction of the Bank Board. 12 U.S.C. §§ 1725(c), 1730(k)(1). FSLIC's purpose is to maintain the financial stability of the savings and loan system and to protect depositors and creditors of savings institutions. 12 U.S.C. §§ 1726, 1729(f), 1730. Under the Bank Board's supervision, FSLIC has two essential functions: (1) to monitor savings and loan institutions for compliance with the federal regulations; and (2) to act as a receiver or conservator in cases of insolvency.

---

**3.** § 1730(k)(1) provides:

Notwithstanding any other provision of law, (A) [FSLIC] shall be deemed to be an agency of the United States within the meaning of section 451 of Title 28; (B) any civil action, suit, or proceeding to which [FSLIC] shall be a party shall be deemed to arise under the laws of the United States, and the United States district courts shall have original jurisdiction thereof, without regard to the amount in controversy; and (C) [FSLIC] may, without bond or security, remove any such action, suit, or proceeding from the State court to the United States district court for the district and division embracing the place where the same is pending by following any procedure for removal now or hereafter in effect....

As receiver, FSLIC can settle, compromise or release claims against the institution, subject to the regulation of the Bank Board. 12 U.S.C. § 1729(d). In the event of liquidation, FSLIC must promptly reimburse depositors out of its insurance fund. It then satisfies nondepositor creditors' claims to the extent that the institution's assets so permit.

The Bank Board has promulgated regulations establishing an administrative procedure for initially adjudicating claims against the assets of a savings and loan institution in receivership. *See* 12 C.F.R. §§ 549.1–549.8. FSLIC must give notice to all claimants of the assets of the institution and specify a date by which claims must be filed. *Id.* § 549.4(a). FSLIC is authorized to "allow any claim seasonably received and proved to its satisfaction," but "may wholly or partly disallow" any claim not proved to its satisfaction. FSLIC must notify the claimant of the disallowance and the reasons for it. *Id.* § 549.4(b). This determination is appealable to the Bank Board. *See id.* § 549.4(c)-(d). While courts may not "restrain or affect the exercise of powers or functions" of a receiver, 12 U.S.C. § 1464(d)(6)(C), the final determinations by the Bank Board are subject to judicial review under the APA, 5 U.S.C. §§ 701–706.

### 3. FSLIC's Exclusive Jurisdiction Over Claims Against Institutions in Receivership

#### a. Statutory Provisions

FSLIC bases its assertion of exclusive jurisdiction principally on two statutory provisions, 12 U.S.C. § 1729(d) and 12 U.S.C. § 1464(d)(6)(C). Section 1729(d), as amended in 1982, provided that in liquidating insured institutions, FSLIC

> shall have power to carry on the business of and to collect all obligations to the insured institutions, to settle, compromise, or release claims in favor of or any against the insured institutions, and to do all other things that may be necessary

in connection therewith, *subject only to the regulation of the Federal Home loan Bank Board,* or, in cases where [FSLIC] has been appointed conservator, receiver, or legal custodian solely by a public authority having jurisdiction over the matter other than said Board, subject only to the regulation of such public authority.

(emphasis added.) Because of a sunset provision in the 1982 amendments, in 1986, section 1729(d) automatically reverted to its pre–1982 form [4]:

> In connection with the liquidation of insured institutions in default, [FSLIC] shall have power to carry on the business of and to collect all obligations to the insured institutions, to settle, compromise, or release claims in favor of or against the insured institutions, and to do all other things that may be necessary in connection therewith, *subject only to the regulation of the court or other public authority having jurisdiction over the matter.*

(emphasis added.)

Before the 1982 amendments, section 1729(c) explained:

> In connection with the liquidation of any such institution, *the language "the court or other public authority having jurisdiction over the matter"* in subsection (d) of this section *shall mean said Board.*

(emphasis added.) Thus, while FSLIC has emphatically pointed to the 1982–1986 language providing that FSLIC is "subject only to regulation of the [Bank Board]," the changes to and from this language have not substantively altered the meaning of section 1729(d). *See Coit Independence Joint Venture v. Firstsouth, F.A.,* 829 F.2d 563, 564 (5th Cir.1987); *Lyons Savings and Loan Ass'n v. Westside Bancorporation, Inc.,* 828 F.2d 387, 389 n. 2 (7th Cir.1987); *Water Gardens I, Inc. v. Mainland Savings Association,* No. A-86-CA-251, slip op. at 2-4 (W.D.Tex. Sept. 24, 1986) [Available on WESTLAW, 1986 WL 15887].

---

**4.** Congress extended the 1986 expiration date several times. *See* Pub.L. No. 99–278, 100 Stat. 397; Pub.L. No. 99–400, 100 Stat. 902; Pub.L.

No. 99–452, 100 Stat. 1140. The 1982 amendment finally expired on October 13, 1986.

FSLIC also relies on 12 U.S.C. § 1464(d)(6)(C) which provides:

> Except as otherwise provided in this subsection,[5] *no court may* take any action for or toward the removal of any conservator or receiver, or, except at the instance of the Board, *restrain or affect the exercise of powers or functions of a conservator or receiver.*

(footnote and emphasis added.)

### b. *Judicial Interpretation*

Most courts which have construed sections 1729(d) and 1464(d)(6)(C) have held the established claims procedure is the exclusive procedure for determining the validity of claims involving the assets of an association in receivership, subject only to judicial review under the APA. The leading case is *North Mississippi Savings & Loan Ass'n v. Hudspeth*, 756 F.2d 1096 (5th Cir.1985), *cert. denied*, 474 U.S. 1054, 106 S.Ct. 790, 88 L.Ed.2d 768 (1986). In *Hudspeth*, the Fifth Circuit adopted the position advanced by FSLIC in this case. The court held the district court lacked subject matter jurisdiction over an action by a former president of a failed institution to enforce a deferred compensation agreement against the institution. The court held the statutory scheme routed Hudspeth's claim to the "administrative track." "Hudspeth [could] challenge the FSLIC's actions before the [Bank Board], and, if unsatisfied, [could] seek judicial review under the APA." *Id.* at 1103. The court explained Congress intended

> FSLIC to be able to act quickly and decisively in reorganizing, operating, or dissolving a failed institution, and intended that the FSLIC's ability to accomplish these goals not be interfered with by other judicial or regulatory authorities.

*Id.* at 1101. The court also noted the resolution of claims outside the statutory reorganization process would delay the receivership function of distribution of assets. The court held that such a delay is a "restraint" within the scope of section 1464(d)(6)(C), given "the overriding Congressional purpose of expediting and facilitating the FSLIC's task as receiver." *Id.* at 1102. Numerous district courts faced with this issue have followed the Fifth Circuit's *Hudspeth* decision.[6]

---

**5.** Congress has given savings and loan institutions the limited right to challenge the appointment of a receiver by instituting an action against the Bank Board for removal of the receiver within thirty days. 12 U.S.C. § 1464(d)(6)(A).

**6.** *See, e.g., York Bank & Trust Co. v. FSLIC*, 663 F.Supp. 1100, 1104 (M.D.Pa.1987) (any claim arising from FSLIC's exercise of its receivership powers must be channeled through administrative process; action contesting FSLIC's determination that certain certificates of deposit were only insured up to $100,000.00 dismissed); *Federal Savings and Loan Insurance Corp. v. Quality Inns, Inc.*, 650 F.Supp. 918, 922 (D.Md.1987) (adjudication of counterclaims would interfere with FSLIC's powers to resolve claims and to manage and distribute receivership assets and thus would "restrain and affect" FSLIC's functions as a receiver, which is prohibited by 12 U.S.C. § 1464(d)(6)(C)); *Zervas v. Faulkner*, No. CA 3–84–0238–G, slip op. at 2–3 (N.D.Tex. Sept. 30, 1985) (judicial resolution of complaint seeking to set aside foreclosure sales, avoid liens, cancel debts, and recover damages from FSLIC "would 'restrain or affect the exercise of powers or functions' of the FSLIC as receiver"; complaint dismissed for lack of subject matter jurisdiction); *Lyons Savings & Loan Ass'n v. Westside Bancorporation, Inc.*, 636 F.Supp. 576, 579, 582 (N.D.Ill.1986) (§§ 1464(d)(6)(C) and 1729(d) foreclose federal courts from presiding over litigation of claims against bank in receivership; claims against FSLIC alleging breach of loan participation agreement, RICO violations, and securities fraud dismissed for lack of subject matter jurisdiction), *aff'd*, 828 F.2d 387 (7th Cir.1987); *First Financial Savings & Loan v. FSLIC*, 651 F.Supp. 1289, 1291 (E.D.Ark.1987) (claims against FSLIC challenging its decisions must be pursued through administrative process; claims dismissed for lack of subject matter jurisdiction); *Baer v. Abel*, 648 F.Supp. 69, 74 (W.D.Wash.1986) (allowing plaintiffs to pursue litigation would restrain FSLIC from fulfilling its role as receiver in violation of 12 U.S.C. § 1464(d)(6)(C); claims against FSLIC for alleged violations of federal and state securities laws, fraud and negligence dismissed for lack of subject matter jurisdiction); *FSLIC v. Oldenberg*, 658 F.Supp. 609, 611 (D.Utah 1987) (Congress specifically determined courts were not to "restrain or affect the functions of a receiver," 12 U.S.C. § 1464(d)(6)(C); plaintiff-intervenors alleging fraud and other breaches of duty, must pursue their claims against FSLIC in administrative arena); *Acquisition Corp. of America v. Sunrise Savings & Loan Ass'n*, 659 F.Supp. 138, 140 (S.D.Fla.1987) (claims fall within provisions which grant broad powers to FSLIC with respect to receivership of failed savings and loan association; court lacks subject matter jurisdic-

In *Chupik Corp. v. FSLIC,* 790 F.2d 1269 (5th Cir.1986), *petition for cert. filed,* Sept. 17, 1987, the Fifth Circuit reaffirmed its position. In *Chupik,* FSLIC was appointed receiver of a failed savings and loan association which had extended loans, secured by mortgage liens, to finance the construction of certain condominiums. Chupik held a materialman's lien on the properties, and filed suit against FSLIC seeking to foreclose the materialman's liens and seeking a declaratory judgment regarding competing lien claims. *Id.* at 1269–70. The Fifth Circuit affirmed the district court's dismissal of Chupik's action, even though Chupik was not a creditor of either the failed institution or FSLIC. The court emphasized the broad scope and purpose of section 1464(d)(6)(C), restating that " 'resolution of even the facial merits of claims outside the statutory reorganization process' is a 'restraint' within the scope of section 1464 and thus is to be avoided." *Id.* at 1270 (quoting *Hudspeth,* 756 F.2d at 1102).

Earlier this year, the Ninth Circuit disagreed with the Fifth Circuit's reasoning, holding that FSLIC does not have power to adjudicate creditor claims, and that federal courts retain original jurisdiction over disputed claims. *Morrison–Knudsen Co., Inc. v. CHG International, Inc.,* 811 F.2d 1209, 1222 (9th Cir.1987), *petition for cert. filed,* Sept. 17, 1987. · In *Morrison–Knudsen,* the Ninth Circuit emphasized a receiver's ordinary functions do not include adjudication. The court was unable to find any indication in the statutory language or legislative history that FSLIC, as receiver, was empowered to adjudicate claims. *Id.* at 1217. On the other hand, the court found the statute's language authorizing FSLIC to "settle, compromise, or release" claims suggested FSLIC did not have "the power to say 'yes' or 'no' with the force of law." *Id.* at 1219. The court noted the agency's regulations are valid, but found

they do not confer on FSLIC adjudicatory power. *Id.* at 1217.

The Ninth Circuit also disagreed with the Fifth Circuit's interpretation of section 1464(d)(6)(C), as explained in *Hudspeth* and *Chupik.* The court found unpersuasive the Fifth Circuit's reasoning that the delay resulting from the initial adjudication by a court of creditors' claims constituted an impermissible restraint under the statute. *Id.* at 1216. The Ninth Circuit stated judicial review could similarly delay the liquidation process, but this was not considered a "restraint" contrary to the statute. *Id.*

Finally, the Ninth Circuit was troubled with the constitutional issues raised by FSLIC's assertion of adjudicatory jurisdiction. *Id.* at 1221–22. The court expressed its concern that FSLIC might be seeking to adjudicate matters of state contract law reserved to Article III courts. *Id.* at 1222 n. 4. The court, without citing any legislative history, stated FSLIC's factual findings would not be reviewable under the "weight of the evidence" test approved of in *Commodity Futures Trading Comm'n v. Schor,* — U.S. —, 106 S.Ct. 3245, 3259, 92 L.Ed.2d 675 (1986). Thus, the Ninth Circuit rejected FSLIC's position, because the statute could be fairly read to avoid the constitutional difficulties which troubled the court. *Morrison–Knudsen,* 811 F.2d at 1222.

The Ninth Circuit nevertheless held district courts should consider the exhaustion of administrative remedies as a basis for exercising their discretion to decline jurisdiction or to stay proceedings. *Id.* at 1223. The Circuit recognized, in spite of its jurisdictional holding, Congress intended that these claims be routed to the administrative track, and that courts should exercise their discretion to not interfere with the statutory scheme. *See id.* at 1223–24.

tion to adjudicate claims); *see also First Savings & Loan Ass'n v. First Federal Savings & Loan Ass'n,* 531 F.Supp. 251, 253–54 (D.Haw.1981) (claims against FSLIC dismissed because court may not restrain or affect FSLIC's exercise of its functions as receiver; affected individuals can appeal to Bank Board and pursue judicial re-

view if still unsatisfied). *But see FSLIC v. Provo Excelsior, Ltd.,* 664 F.Supp. 1405, 1415–17 (D.Utah 1987) (FSLIC does not have adjudicatory powers or exclusive jurisdiction over counterclaims against association in receivership, alleging fraud, violation of state and federal securities and racketeering laws).

Since the Ninth Circuit's decision in *Morrison–Knudsen*, the Seventh Circuit and most district courts have declined to follow *Morrison–Knudsen*, and have continued to follow the Fifth Circuit's decisions in *Hudspeth* and *Chupik*. *See Lyons Savings and Loan Ass'n v. Westside Bancorporation, Inc.*, 828 F.2d 387, 392 (7th Cir.1987), *aff'g* 636 F.Supp. 576 (N.D.Ill.1986); *York Bank & Trust Co. v. FSLIC*, 663 F.Supp. 1100, 1104 (M.D.Pa.1987); *FSLIC v. Oldenburg*, 658 F.Supp. 609, 611 (D.Utah 1987); *Acquisition Corp. of America v. Sunrise Savings & Loan Ass'n*, 659 F.Supp. 138, 140 (S.D.Fla.1987). *But see FSLIC v. Provo Excelsior, Ltd.*, 664 F.Supp. 1405, 1415–17 (D.Utah 1987).

The Seventh Circuit was not called upon in *Lyons* to rule on the competing positions of the Fifth and Ninth Circuits, because the appellants did not challenge FSLIC's power to adjudicate claims. The appellants only argued that the administrative claims process is limited to monetary claims against a failed institution. *Lyons*, 828 F.2d at 391. Nevertheless, the Seventh Circuit called the Ninth Circuit's decision "sweeping" and its result "revolutionary," noting *Morrison–Knudsen* "invalidat[ed] an important agency power authorized by regulations for over thirty years." *Id.* at 392. In addition, the Seventh Circuit followed the lead of the Fifth Circuit in interpreting section 1464(d)(6)(C). Thus, the Seventh Circuit held that allowing the district court to decide who is entitled to serve as lead lender, with the possibility that FSLIC would be displaced as lead lender, would "restrain and certainly affect the FSLIC in the exercise of its powers and functions." *Id.* at 393. Furthermore, the court, relying on the Fifth Circuit's decisions in *Hudspeth* and *Chupik*, held that "recognizing a distinction between monetary and non-monetary claims would seriously undermine [section] 1464(d)(6)(C)." *Id.* at 395.

#### c. *Analysis*

■ FSLIC's motion to dismiss in this case requires a choice between the opposing positions taken by the Fifth and Ninth Circuits. I decline to follow the holding of the Ninth Circuit. As recognized by the Fifth and Seventh Circuits and numerous district courts, there is a strong public interest in the orderly and prompt payment of depositors' and creditors' claims. Delays in the liquidation of the assets of an institution in receivership threaten the insurance fund with a precarious gap between insurance payments and recoupment. The Ninth Circuit noted in *Morrison–Knudsen* that FSLIC's insurance fund is currently under unprecedented strain because of the "nationwide deterioration of the savings and loan industry" in the 1980's. *Morrison–Knudsen*, 811 F.2d at 1216 (quoting, *Independent Bankers Ass'n v. Federal Home Loan Bank Board*, 557 F.Supp. 23, 25 (D.D.C.1982)). The Ninth Circuit intimated that FSLIC is asserting exclusive jurisdiction over claims against institutions in receivership in response to the problems facing the savings and loan industry. *Morrison–Knudsen*, 811 F.2d at 1216. Congress, however, enacted this network of regulatory bodies for the very purpose of guarding against and dealing with future failures in the nation's banking institutions. *See id.* at 1215.

The HOLA and the NHA established an administrative system to deal with claims facing insolvent institutions in receivership such as the claims Resna is asserting in this case. The Bank Board's regulations established an administrative procedure in which FSLIC initially adjudicates such claims. This regulatory scheme reflects the Bank Board's construction of its governing statutory scheme, which must be accorded "considerable weight." *Chevron U.S.A. v. Natural Resources Defense Council*, 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984).

In 1966 Congress amended the HOLA and the NHA in order to "arm regulatory agencies with a wider range of effective enforcement remedies" so as to "provide sorely needed flexibility to protect the public's money in the form of demand deposits and time and savings accounts...." *Lyons Savings & Loan Ass'n v. Westside*, 636 F.Supp. 576, 580 (N.D.Ill.1986) (citing H.R.Rep. No. 2077, 89th Cong., 2d Sess. 4–5 (1966)), *aff'd*, 828 F.2d 387 (7th Cir.

1987). As part of this effort to broaden the powers of the Bank Board and other regulatory bodies, Congress added the language contained in 12 U.S.C. § 1464(d)(6)(C) restricting the federal courts' jurisdiction. *Lyons,* 636 F.Supp. at 580. The Senate Banking and Currency Committee, in its section-by-section summary of the 1966 amendment stated:

> The provisions of this subparagraph [12 U.S.C. § 1464(d)(6)(C)] would, in effect, *limit the jurisdiction of a court* to order the removal of a conservator or receiver, except in an action for removal brought by an association under authority of paragraph (6)(A) of the proposed amended section 5(d), or, except at the instance of the Board, to restrain the exercise of the powers or functions of a conservator or receiver.

(emphasis added.) S.Rep. No. 1482, 89th Cong., 2d Sess. 14, *reprinted in* 1966 U.S. Code Cong. & Admin.News 3532, 3545.

The prohibition of judicial interference with the receiver's functions evinces the intent of Congress to channel claims against an institution in receivership through the administrative process which it created. The 1966 legislative history further highlights the intent of Congress. As the House Committee on Banking and Currency reported:

> The scope of judicial review shall also be in conformity with the provisions of Title 5 of the United States Code relating to judicial review of administrative action, ... except that agency action, findings, and conclusions *may be set aside if not supported by the weight of the evidence....* The purpose of the new language is to safeguard the right of individuals and institutions from arbitrary and capricious agency action.

(emphasis added) H.Rep. No. 2077, 89th Cong., 2d Sess. 6 (1966). This language indicates the intent of Congress that the claims against an institution in receivership go through the administrative agencies before reaching the federal courts. Moreover, the "weight of the evidence" standard of review specified by Congress demonstrates that that Congress did consider

the rights of claimants, a concern of the Ninth Circuit. *See Morrison–Knudsen,* 811 F.2d at 1219.

Furthermore, there is no inconsistency between section 1464(d)(6)(C)'s restriction of the court's jurisdiction to hear claims against the receiver and section 1730(k)(1)'s provision that federal courts shall have original jurisdiction of any action to which FSLIC is a party. FSLIC is an agency and instrumentality of the United States and as such it is proper and necessary that FSLIC have the power to defend against lawsuits in the federal courts, if only to appear in court and to move for dismissal of the claims filed against it, or to defend its determination in judicial review of its actions. *See Baer v. Abel,* 648 F.Supp. 69, 74 (W.D.Wash.1986).

The provision of Congress that "no court ... restrain or affect the exercise of powers or functions of a conservator or receiver" cannot be ignored. 12 U.S.C. § 1464(d)(6)(C). Judicial resolution of Resna's claims against Life Savings outside the statutory scheme would delay the receivership function of distribution of assets; such a delay constitutes an impermissible restraint under section 1464(d)(6)(C). *See Hudspeth,* 756 F.2d at 1102. If unsatisfied, Resna can challenge the FSLIC's actions before the Bank Board, and can also seek judicial review under the APA. *See id.* at 1103.

*Conclusion*

■ Congress created an administrative system to deal with claims such as Resna's claims against Life Savings, and Congress specifically prohibited courts from restraining or affecting the functions of FSLIC as receiver, except at the instance of the Bank Board. Accordingly, Resna's claims against Life Savings are dismissed with prejudice for lack of subject matter jurisdiction.

After being appointed receiver for Life Savings, FSLIC removed this action to federal court pursuant to 12 U.S.C. § 1730(k)(1). The court's dismissal of Resna's claims against Life Savings eliminates the principal controversy which gave this court jurisdiction. The remaining claims

against FEMC appear to involve only state law, although it is unclear on which law plaintiff based its illegal discrimination claim. Resna's claims against FEMC are remanded to the state court pursuant to this court's discretion. *See* 28 U.S.C. § 1447(c).